1  **ROBERT L. BRACE** (CA Bar No.122240)
   **HOLLISTER & BRACE**
2  A Professional Corporation
   1126 Santa Barbara Street
   Post Office Box 630
3  Santa Barbara, CA  93102
   Telephone: (805) 963-6711
   Facsimile:  (805) 965-0329
4  E-Mail:  hblaw@hbsb.com

5  **RICHARD W. HORTON** (NV Bar No. 1542)
   **LIONEL SAWYER & COLLINS**
   Suite 1100 Bank of America Plaza
6  50 West Liberty Street
   Reno, NV 89501
   Telephone: (775) 788-8666
7  Facsimile:  (775) 788-8682
   E-Mail: rhorton@lionelsawyer.com

8
   Attorneys for Thomas A. Dillon, Independent
9  Fiduciary of Employers Mutual Plans



10

11        **IN THE UNITED STATES DISTRICT COURT**
          **FOR THE DISTRICT OF NEVADA**

12                          CV-N-03-0119-HDM-VPC

13

14  Thomas A. Dillon, Independent Fiduciary
    of Employers Mutual Plans,

15                 Plaintiff,              **COMPLAINT FOR:**

16         v.                              1.   **CIVIL RICO;**

17  James Lee Graf; William R. Kokott;     2.   **RICO CONSPIRACY**
    Nicholas E. Angelos; Kari Hanson; Agent
18  Coalition of America, Inc.; Associated
    Agents of America, Inc.; Michael E.    3.   **FRAUD**
19  DeBello; Nathan Foreman; American
    Benefit Society, Inc.; Christopher S.  4.   **BREACH OF CONTRACT TO**
20  Ashiotes; Sierra Administration Marketing,    **PROCURE VALID**
    Inc.; Reggie Caillouet dba Reggie Caillouet   **INSURANCE;**
21  Brokerage; AAA Insurance Services; ADR
    Insurance Services, Inc.; Advanced     5.   **INSURANCE PRODUCER**
22  Marketing; Affordable Insurance Options;     **MALPRACTICE**
    AFM Insurance Group; Humayun Bashir
23  Afzal; Timothy Alder; Michael Alexander;  6.  **BREACH OF WARRANTY OF**
    All Florida Insurance Services Inc; Alliance   **AUTHORITY**
24  for Affordable Health; John Amann;
    American Coalition of Consumers, L.L.C.;  **JURY DEMAND**
25  Thomas Armstrong; John Kadlec Arnold; R.
    A. Ashworth; Association Benefits
26  Solution, Inc.; AXA Advisors, LLC; Julie
    Baker; Karen Barber; Daniel Barnett;
27  Barnhart & Associates; Willard Gene
    Barnhart; James Barnhill; Shirley Barton;
28  Gary Allen Bastie; Harold Jose Batista;

F:\MATTER\WK3\6583.001\pldgs\COMPLAINT.wpd



1  Frederick Bauer; John Been; Benson,
2  Young, and Downs Ins. Inc.; Ivan
   Bentauin; Bart Berretta; Steven Blackford;
3  Dirk Blankenship; Stephen Blust; Peter
   Bogutzki; Richard Bokofsky; Jan Booth-
4  Smith; Richard Brantley; William Brewer;
   Steven Brown; Brown-Gainer & Associates;
5  Brown-Gainer, Inc.; Bruce W. Fletcher Co.,
   Inc.; Carrie Bryant; Dennis Burden; Burkett
6  & Asso. Ins. & Fin. Svs Inc; James Burkett;
   Debra Burton; E. Bruce Bushong; Gae
7  Callaway; Capital Financial Group, Inc;
   Caputo Insurance Agency, Inc.; Richard
8  Caputo; Robert Carlin; Steven Carlson;
   Todd Carmack; Donald Carroll; CBS Ins
9  and Plan Services; Kevin Cerulli; Donald
   Chapman; Chesney Insurance Agency;
10 Larry Chesney; Antone Chomenko;
   Leonard Cifrese; Anneliese Clark; Dean
11 Clark; Brian Clothier; Russell Coats;
   Colella Financial Services, Inc.; James
12 Colella; Thomas Coleman; Complete
   Financial Service; Jeffrey Conley; Patrice
13 Connolly; Robert Corallo; Connie Countie;
   Elda Cox; Kurt C. Cradic; Dion R. Cruz;
14 CSS Inc.
   Customer Service Solutions, Inc.; Brandy
15 Cumming; James Darby; Earl Grant
   Darbyson; David E. Silva Insurance
16 Agency, Inc.; William Davidson; Jean F.
   Davis; Kelly Davis; Mark Davis; Samuel
17 Day; Joseph Debrell; Tammi Desideri;
   Maria Diaz; Joseph Dibrell; Kenneth
18 Dinklage; Charles DiPrimio; Anthony
   DiRienzo; Wilford Dogan; James Doyle;
19 David Dudics; Julian Dwyer; Earl J.
   Venable & Associates; Kent Edwards;
20 James Ehrhart; Hector Elizondo, Jr.; John
   Elmore; John Emerick; Employee Benefit
21 Service; Moses Enwerekowe; Fredrick
   Epperson; Escambia Insurance; Estates
22 Solutions, Inc. dba: Benefit & Estates
   Solutions; Eddie Ette; Brent Euler;
23 Executive & Employee Benefits, Inc.;
   Express Florida Health and Life Ins;
24 F.A.I.A. Service Corp; Vito Falco; Michael
   Farley; Thomas Felaki; John Feliciano; Roy
25 Fenner; Robert Fenton; Five Star
   Marketing; Five Star Marketing Group;
26 John Flanagan; Linda Fleetwood;
   Fleetwood-Franz 'Ee Benefits, Inc.;
27 Kenneth Fleming II; Bruce Fletcher; Gale
   Follett; For Your Benefits, Inc.; Harnid
28 Foroudi; Charles Francis; Larry Fussell;

1   Gaetani Associates; Frances Gaetani;
2   Michael Gainer; Ronald Garner; Paula
    Garst; J. Christopher Gauss; Robert Gill;
3   Leslie Glazier; GMI Financial Group, Inc.;
    Richard Goodman; Susan Gordon;
4   Elizabeth Gore; Lillian Gore; Richard
    Gorfido; Nancy Graham; James R. Grant;
5   Gary Gravely; Darlene Graves; Mark
    (Breck) Greene; JoAnn Gulledge; David
6   Haas; Haas Insurance Service; Andy
    Haase; Michael Hall; Robert E. Hall;
7   Halsey Insurance Agency; Lee Hampton;
    Hancor Insurance Agency; George
8   Hannigan; Roy Hanson; Cyd Hargrove; R.
    J. Hasselmier; Health Plans of Texas; John
9   Helvie; Kathryn Hendrix; Gerald Higgins;
    Thomas E. Higgins; Hilcher Ins. &
10  Financial Services; C. Wayne Hilcher,
    LUTCF; David Hines; Roger F. Holt, Jr;
11  James Hopgood; Richard Horch; Horizon
    Insurance Associates, Inc.; Edward
12  Hubbard; Hubbard Insurance; Hudson
    Eldridge Insurance Agency; David Scott
13  Hughes; Wesley James Hunt; Robert Hurt;
    I. C. Brokerage, Inc.dba Insurance Center;
14  Gerald Ide; Jenny Ide; Insurance Concepts
    of Texas; Insurance Marketing Group of
15  Florida, Inc.; InsurCare, Inc.; InsurCare,
    Inc.; Anthony Iocono; Donna Iverson; J.
16  Christopher Gauss, Inc.; Donald Jacoby;
    JFM Insurance Inc.; John Johnson; Michael
17  Johnson; Brian Jones; Levern Jordan; Keith
    Jordano; John Kaiser; Eric Kantor; Bruce
18  Kashick; Mal Kelly; Kettler & Associates,
    Inc.; Fredrick Kettler; Edgar Kieschnick;
19  Cecil Knight; Michael Kolacz; Robert
    Kotman; Richard Kozar; Hilbert Kritch;
20  James Kruckemeyer; Richard Kwong; Sally
    Lane; James Lang; Paul Laroussini; Mitch
21  Laughton; Dennis Law; John LeFavour;
    June Lempke; Gal Lev-Lehman; Walter
22  Lightfoot; James Lilly; Harvey Litvin;
    William Michael Lovell; Stephen Lukacs;
23  Michelle Magidson; Fredrick Magiera;
    Mainstream Insurance; Gary Maxie; Brian
24  McAllister; Andrew McCoy; Bruce
    McKinney; David McNamara; McNulty
25  Barber Consulting; Vence Meneely; Gary
    Miano; Robert John Middleton; Midwest
26  Marketing Insurance Agency; Mike
    Williams Ins. Ltd.; Mark Miller; Mills
27  Cumming & Assoc, Inc.; Jeffrey Milrad;
    Lawrence Montgomery; Robert Morgan;
28  Wayne Morris; Wayne Morriss; Robert

1  Mullinax; William Murphy; Harrison
2  Myers; Nassau Bay Agency, Inc;
   Nationwide Insurance; Michael Newby;
3  Donald Alan Nicholson; Ernest Norman;
   Norwell and Norwell; Rhonda O'Banion;
4  Gary Oliver; Olympic Mountain Agency;
   Gerald Owens; Page Inc.; Kay Page;
5  Matthew Palmer; Edward Parodi; William
   H. Patterson; Toni Paxton; D. Jean Payne;
6  Sherri Perri; David William Perry; Petra
   Insurance Agency, Inc.; William Phillips;
7  Steven Pickett; Marc Pieroni; Fredrick
   (Rick) Pike; Pike Insurance Agency, Inc.;
8  Susan Pine; Brent Pinkerton; Raymond
   Pinto; David Eli Polovina; Michael Porter;
9  Cameron Pouncey; Preferred Care, Inc.;
   Premier Marketing Group; Stanley Putman;
10 Quik Quote Insurance Brokers, Inc.; R. B.
   Insur., Assoc., Inc.; Arif Rahim; Lawrence
11 Ramers; Ray Wall & Associates, Inc.; Mark
   Reaves; Robert J. Reid; Reliable Insurance;
12 Thomas Reynolds; Rick Horch Annuities
   and Ins.; Albert Riehl; Michael Roberts;
13 Rocky Financial Services / aka: Ace
   Financial Services; Nathan Rogers; Sheila
14 Rooney; Scott Rose; Kenneth Rosicka; RTI
   Insurance Services of FL, Inc.; Jesse Rubio;
15 Bobby Rundle; Barry Rusche; Scott
   Rutherford; Ryko Corp, Inc.; Steven Sacks;
16 SafeComp; Catherine Sams; Susan
   Schilling; Craig Schoen; Dennis Schrecker;
17 Robert Schwab; Selwin Schwartz; S. Lewis
   Shafik; Edward (Brack) Shaver; Fredrick
18 Shealy; Sheila W. Rooney Agency;
   Howard Siegel; David E. Silva; Clyde
19 Sinyard; Don R. Smith; John Snape;
   Audrey Snow; Gerald Solomon; Dennis
20 Stanhoff; Starling & Associates, L.L.C.;
   William F. Starling; Stetson-Beemer, Ins;
21 Donna Stilwell-Kronick; Stockman's
   Insurance; Robert Stone; Penelope Stump;
22 Sullivan & Associates, Inc.; John Sullivan;
   Timothy Sullivan; Summit Group Benefits,
23 Inc.; James Swafford; Porter Talbot;
   Richard Tani; Nicholas Taromina; Texas
24 Ins. and Financial Svcs., Inc; The Blackford
   Group; The Darbyson Group; The
25 Insurance Center; The Laughton Company;
   Scott Thiltgen; Thompson Associates, Inc.;
26 James Thompson; Kyle Thompson; Terence
   Thoruton; Tobin Ins. Agency, Inc.; James
27 Tobin; Stewart Turnage; James Tuten;
   Ronald Unfried; Deborah Usher; USI
28 Insurance Services Corp.; Sebastian Valera;

1  Vantage Insurance Agency of NV; Earl
2  Venable; Roy Vicencio; Voluntary Benefit
   Specialists; Gene Wadell; Wadell
3  Insurance Group; Raymond Wall; Gary
   Ward; John Wathen; Richard Waugaman;
4  Brian Weaver; Eric Westall; Harry Wilk, III;
   Bernard Williams; George Michael
5  Williams; Karel Anne Williamson; WIN;
   Windsor Benefit Consultants, Inc.; Wolfco,
6  Inc.; Carmen Wolfe; Worldwide Ins.
   Group, Inc.; Worldwide Insurance
7  Services, Inc.; John Wuthnow; Angie
   Yanda; Leon Yannaroudis; Adrian
8  Zangirolarrli;

9                    Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I     NATURE OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II    JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III   PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      A.    Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

            i    The RICO Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

            ii   The Negligent Defendant Wholesale Insurance Producers . . . . . . . . . . . .  5

            iii  The Negligent Defendant Retail Insurance Producers  . . . . . . . . . . . . . . .  7

IV    AGENCY AND INFORMATION ALLEGATIONS  . . . . . . . . . . . . . . . . . . . . . . . .  8

V     GENERAL FACTUAL ALLEGATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

      A.    The Scheme of the RICO Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

      B.    The Predicate Acts of the RICO Defendants in
            Furtherance of the Ongoing Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

      C.    The Negligent Acts and Omissions of the
            Defendant Insurance Producers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

VI    FIRST CLAIM FOR RELIEF, 18 U.S.C. §1962(c) – Civil RICO
      Against the RICO Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

      A.    The Fraudulent Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

      B.    The Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

      C.    Pattern of Racketeering Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

VII   SECOND CLAIM FOR RELIEF, 18 U.S.C. §1962(d) – Conspiracy
      to Commit Civil RICO Against the RICO Defendants . . . . . . . . . . . . . . . . . . . . .  25

VIII  THIRD CLAIM FOR RELIEF, Fraud Against the RICO Defendants . . . . . . . . . . . .  26

IX    FOURTH CLAIM FOR RELIEF, Breach of Contract to
      Procure Valid Insurance Against the Defendant Wholesale
      and Retail Insurance Producers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

| | | | |
|---|---|---|---|
| X | **FIFTH CLAIM FOR RELIEF**, Professional Malpractice Against the Defendant Wholesale Insurance Producers and Retail Insurance Producers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |
| XI | **SIXTH CLAIM FOR RELIEF**, Breach of Warranty of Authority Against RICO Defendants, Wholesale Insurance Producers and Defendant Retail Insurance Producers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 30 |
| XII | **PRAYER FOR RELIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 31 |
| | A. As to the RICO Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 31 |
| | B. As to All Other Applicable Claims For Relief . . . . . . . . . . . . . . . . . . . . . . . | 31 |

**DEMAND FOR JURY TRIAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

1      Plaintiff Thomas A. Dillon, as the Court Appointed Independent Fiduciary of the

2  Employers Mutual Plans alleges against the defendants as follows:

3                           I

## NATURE OF THE ACTION

5    1.     Approximately 7,000+ employers throughout the United States established

6  individual Employee Welfare Benefit Plans ("EWBPs") for their respective employees by

7  establishing or maintaining programs for the purpose of providing medical, surgical,

8  prescription drug and hospital care benefits to their employees and the dependents of their

9  employees (hereinafter "Participants"). Plaintiff Thomas A. Dillon has been appointed the

10  Independent Fiduciary of these 7,000+ EWBPs (sometimes hereinafter referred to as the

11  "Employers Mutual Plans" or the "EWBPs") because, in part, the medical insurance they paid

12  for turned out to be fraudulent and claims payable pursuant to the individual plans remain

13  unpaid.

14    2.     The Employers Mutual Plans were created by the employers when they agreed to

15  purchase or participate in the purchase of health insurance for the benefit of the participants.

16  To accomplish this task, the EWBPs attempted to purchase health insurance offered for sale

17  by the RICO Defendants identified herein. Instead of purchasing real health insurance as

18  represented by the RICO Defendants, the 7,000+ Employers Mutual Plans purchased the

19  facade of insurance and had their premiums stolen or embezzled by the RICO Defendants

20  pursuant to the plan of the RICO enterprise.

21    3.     The RICO Defendants defrauded the 7,000+ Employers Mutual Plans by falsely

22  representing to them that in exchange for over $15,000,000 in premiums, paid on a monthly

23  basis to the RICO Defendants from January 2001 through to the end of January 2002, the

24  Employers Mutual Plans would be purchasing health insurance for their corresponding

25  participants issued by various licensed insurers. However, no licensed insurers agreed to

26  provide health insurance to the participants of the 7,000+ Employers Mutual Plans as

27  promised by the RICO Defendants, which resulted in the 30,000 participants incurring

28  approximately $50,000,000 in health care and prescription drug claims payable pursuant to

1   the promised policies which remain unpaid. The fraudulent health insurance was sold to the

2   7,000+ Employers Mutual Plans by approximately 400 Insurance Producers, who have been

3   sued herein for malpractice, breach of contract to procure valid insurance and breach of their

4   warranty of authority as agents of the alleged admitted carriers.

5       4.      The 400 Defendant Insurance Producers  committed malpractice and breached

6   their respective contracts to provide valid insurance by, among other things: (i) failing to

7   confirm that the licensed insurers had, in fact, granted the RICO Defendants the authority to

8   bind coverage; (ii) failing to confirm that the licensed insurers had, in fact, agreed to insure the

9   7,000+ Employers Mutual Plans; and (iii) failing to investigate the legitimacy of the facade of

10  health insurance offered for sale by the RICO Defendants.

11                                          **II**

12                          **JURISDICTION AND VENUE**

13      5.      This Court has jurisdiction pursuant to the Racketeer Influenced and Corrupt

14  Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, specifically, 18 U.S.C. § 1964(c); 28

15  U.S.C. § 1331; and Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367 (a) because the

16  state court claims are so factually related to the RICO claims that they form part of the same

17  case or controversy.

18      6.      Venue is properly laid in this District under 28 U.S.C. § 1391(b) because several

19  defendants, including Defendant Sierra Administration Marketing, Inc. may be found in this

20  District, and because a substantial part of the events giving rise to the claims brought against

21  all of the defendants occurred in this District. Examples of these events include, among many:

22  (i) the RICO Defendants' corporate entities used to effectuate the fraud were incorporated and

23  had their represented principal places of business in this District; (ii) the participants, as a

24  precondition to obtaining the alleged health insurance, were required to join one of 16

25  Associations located in this District;  (iii)   the contracts between the Defendant Insurance

26  Producers and the RICO Defendants provided that in exchange for a commission, the

27  Insurance Producers were required to solicit participants to become members of one of the

28  16 Associations located in this District;  (iv) the Associations calculated and paid the

1   commissions to the Insurance Producers from premiums paid into this District; (v) premiums

2   were made payable to the Associations located in this District and were mailed to this District;

3   (vi) medical insurance claims were adjudicated in this District and (vii) some medical

4   insurance claims were paid from this District.

5                                              III

6                                           **PARTIES**

7   **A. Plaintiff**

8       7.      Plaintiff Thomas A. Dillon ("Dillon") is a resident of California.  On February 1,

9   2002, Federal District Judge David W. Hagen granted a request for a Preliminary Injunction

10  filed by Elaine Chao, the Secretary of the United States Department of Labor, which Order

11  reconfirmed the December 13, 2001 appointment of Dillon as the Independent Fiduciary of

12  the approximate 7,000+ Employers Mutual Plans created by the individual employers for the

13  purpose of providing prescription drug, medical, surgical and hospital care benefits to their

14  participants.  Plaintiff has been granted plenary authority to collect, marshal and administer

15  the assets of the 7,000+ Employers Mutual Plans, including the power to pursue all legitimate

16  claims of the 7,000+ Employers Mutual Plans against culpable third parties, including those

17  identified in this Complaint.  This action is brought pursuant to and in accordance with the

18  District Court's Order of February 1, 2002. This action is brought by Dillon for the benefit of

19  the 7,000+ EWBPs, excluding any defendants who themselves may have purchased the

20  subject insurance.

21  **B. Defendants**

22      i.      The RICO Defendants

23      8.      Defendant James Graf ("Graf"), a resident of California, was the alter ego of various

24  corporate entities incorporated in the good State of Nevada and operated by Graf for the sole

25  and exclusive purpose of stealing premiums paid by the 7,000+ Employers Mutual Plans for

26  health insurance.  Corporate entities used by Graf for his individual advantage and gain

27  included:  Employers Mutual LLC; Colombia Health Network, Inc.; Western Health Network,

28  ///

1 | Inc.; WRK Investments, Inc.; Graf Investments, Inc. and Graf's 16 Nevada Associations.[1] The
2 | corporate entities operated by Graf were adversely dominated by Graf and
3 | other wrongdoers who never represented the interests of the corporate entities but rather
4 | looted the assets deposited into their accounts for their own individual advantage and gain.
5 | The corporate entities operated by Graf functioned as a continuing organization of sufficient
6 | structure to constitute an enterprise for RICO purposes. The enterprise alleged herein had an
7 | existence separate and apart from the pattern of racketeering activity because the corporations
8 | identified herein as being involved in the RICO activity had legal existences separate from
9 | their participation in the racketeering.

10 |     9.    Employers Mutual LLC and Graf's 16 Nevada Associations were formed and have
11 | always operated, until the appointment of Dillon as the Independent Fiduciary, as shells and
12 | shams of the RICO Defendants set up solely to create the facade of a legitimate insurance
13 | program.   The unpaid insurance claims discussed herein do not arise out of or are they
14 | connected in any way to Employers Mutual LLC's or Graf's 16 Nevada Associations' financial
15 | inability to pay those claims because those entities were not formed by the RICO Defendants
16 | for the purpose of providing real insurance and the RICO Defendants never intended for those
17 | entities to pay the incurred insurance claims .

18 |     10.    Defendant William R. Kokott ("Kokott"), a resident of California, was also an alter
19 | ego of Employers Mutual LLC and Graf's 16 Nevada Associations and was a conspirator with
20 | Graf in the scheme to steal the premiums paid by the 7,000+ Employers Mutual Plans for
21 | health insurance for their respective employees and dependents of employees.  Prior to
22 |  Kokott's participation in this RICO scheme, Kokott had no experience in the fields of health
23 | insurance, ERISA, or the administration of an insurance plan.

24 |
25 |
26 |
27 |
28 |

---

[1]Graf's 16 Nevada associations" include the following: American Association of Agriculture, Association of Automotive Dealers and Mechanics, Association of Barristers and Legal Aids, Communication Trade Workers Associations, Construction Trade Workers Associations, American Coalition of Consumers, Association of Cosmetologists, Culinary and Food Services Workers Association, Association of Educators, Association of Health Care Workers, National Alliance of Hospitality and Innkeepers, Association of Manufacturers and Wholesalers, Association of Real Estate Agents, Association of Retail Sellers, National Association of Transportation Workers, and National Association of Independent Truckers.

11.     Defendant Nicholas Angelos ("Angelos"), a resident of California, was also an alter ego of Employers Mutual LLC and Graf's 16 Nevada Associations and was a conspirator with Graf and Kokott in the scheme to steal the premiums paid by the 7,000+ Employers Mutual Plans for health insurance.  Prior to Kokott's participation in this scheme, Kokott had no experience in the fields of health insurance, ERISA, or insurance administration.

12.     Defendant Kari Hanson ("Hanson"), a resident of California, was also an alter ego of Employers Mutual LLC and Graf's 16 Nevada Associations and was a conspirator with Graf, Angelos and Kokott in the scheme to steal the premiums paid by the 7,000+ Employers Mutual Plans for health insurance. Prior to Hanson's participation in this scheme, Hanson had no experience in the fields of health insurance, ERISA, or insurance administration.

ii.     The Negligent Defendant Wholesale Insurance Producers

13.     Defendant Agent Coalition of America, Inc., a California Corporation, doing business as Associated Agents of America (hereinafter "AAA") is a wholesale insurance producer that marketed the subject health insurance through its stable of Retail Insurance Producers to the 7,000+ Employers Mutual Plans for the benefit of the 30,000 participants. On or about October 1, 2000, AAA entered into a producer agreement to market the insurance in exchange for 15% of the premiums received by the RICO Defendants–a commission.  The negligent acts, errors and omissions of AAA and the other negligent Defendant Insurance Producers occurred between October 1, 2000 and December 13, 2001, when the Honorable Judge Hagan granted the request for a Temporary Restraining Order filed by Elaine Chao, the Secretary of the United States Department of Labor, and appointed Dillon as the Independent Fiduciary of the 7,000+ Employers Mutual Plans.

14.     Defendant Michael F. DeBello is a resident of California and an employee of AAA. DeBello marketed the fraudulent health insurance for AAA while acting within the course and scope of his employment with AAA.

15.     Defendant Nathan Foreman, aka "Buddy" Foreman is a resident of California and an employee of AAA who also marketed the fraudulent health insurance for AAA while acting within the course and scope of his employment with AAA.

16. Defendant American Benefit Society, Inc. (hereinafter "ABS"), a corporation of unknown origin, is a wholesale insurance producer that marketed the subject health insurance through its stable of Retail Insurance Producers to the 7,000+ Employers Mutual Plans for the benefit of the 30,000 participants. On or about February 1, 2001, ABS entered into a Producer Agreement with AAA whereby ABS agreed to market the insurance in exchange for a 7% commission on premiums received by the RICO Defendants. In the commission sharing arrangement between AAA and ABS, for every premium dollar received by the RICO Defendants, AAA would receive an 8% commission and ABS would receive a 7% commission for a total commission of 15%.

17. Defendant Christopher S. Ashiotes is a resident of New Jersey and an employee of ABS who marketed the fraudulent health insurance for ABS while acting within the course and scope of his employment with ABS.

18. Defendant Reggie Caillouet ("Caillouet") is a resident of Houma, Louisiana and is a wholesale producer that marketed the subject health insurance through his stable of Retail Insurance Producers to the 7,000+ Employers Mutual Plans. Caillouet entered into a Producer Agreement with AAA whereby Caillouet agreed to market the insurance in exchange for a 10% commission on premiums received by the RICO Defendants. Again, for every premium dollar paid, in accordance with the AAA and Caillouet commission sharing arrangement, AAA would receive 5% and Caillouet would receive 10%. Caillouet would then share his 10% of the commission with his stable of Retail Insurance Producers in separate commission sharing arrangements.

19. The above-named Defendant Wholesale Insurance Producers acted as the agents of the Defendant Retail Insurance Producers and the Employers Mutual Plans with regard to the procurement of the requested insurance coverage. Retail insurance producers purchase insurance for their clients through wholesale insurance producers. The wholesale insurance producer is charged with the obligation to investigate the legitimacy of the insurance program and, after due diligence, makes recommendations for placement of coverage to the retail insurance producer for the benefit of the policyholder or EWBP. Information transmitted to

a wholesale insurance producer is, in all instances, information transmitted to the retail insurance producer which is then relied on and passed on to the insured.

iii.     The Negligent Defendant Retail Insurance Producers

20.     Defendant Sierra Administration Marketing, Inc. ("Sierra"), a Nevada corporation, had its principal place of business in Reno, Nevada and acted as a Retail Insurance Producer. Sierra was part of Caillouet's stable of Retail Insurance Producers whereby Caillouet and Sierra entered into a Producer Agreement whereby Sierra would receive an 8% commission and Caillouet a 2% commission on premiums paid to the RICO Defendants from sales by Sierra. In some instances Sierra, as with many of the Defendant Retail Insurance Producers, acted in the capacity of a wholesaler or middleman  whereby Sierra solicited other Defendant Retail Insurance Producers to market the subject insurance.  In those instances, AAA would receive a 5% commission, Caillouet would receive a 2% Commission, Sierra would receive a 3% commission and the down line Retail Insurance Producer would then receive a 5% commission, for a total commission of 15%.

21.     Retail Insurance Producers are hired by insureds to procure insurance coverage appropriate for the risk being insured.  Retail insurance producers act as the agents of the insureds and, based upon their due diligence, pick the insurance product to be purchased. In the attempted procurement of insurance during the period relevant to this litigation, the Employers Mutual Plans relied on the Defendant Retail Insurance Producers who, in turn, relied on the Defendant Wholesale Insurance Producers who, in turn, relied on the false representations that coverage was to be provided to the 30,000 participants of the 7,000+ Employers Mutual Plans by admitted carriers.  The false representations came from the Insider RICO Defendants.

22.     The negligent Defendant Retail Insurance Producers, in exchange for a commission, sold the subject health insurance to the approximately 7,000+ Employers Mutual Plans whose participants have approximately $50,000,000 in unpaid health insurance and prescription drug claims.  The negligent Defendant Retail Insurance Producers are identified in alphabetical order on Exhibit 1 to this Complaint.

23.     Commission payment schedules obtained from the books and records of AAA, ABS, and Employers Mutual LLC  identify the negligent Defendant Retail Insurance Producers who sold the facade of health insurance to the corresponding EWBP represented by Dillon. Matching the commission information with the unpaid claims information will determine the amount of damage caused to each EWBP by each Defendant Retail Insurance Producer.

24.     The transaction described herein involving the attempted purchase of health insurance by the 7,000+ EWBPs is typical of all of the attempted purchases of health insurance by all of the EWBPs.  Each EWBP attempted to purchase their health insurance from a Retail Insurance Producer who relied upon the recommendation that coverage was to be placed with an admitted carrier by a Wholesale Insurance Producer.  In the procurement of the subject insurance, the Retail Insurance Producers as well as the Wholesale Insurance Producers are deemed to act for the benefit of the insureds and as the agent of the insureds. Each Defendant Insurance Producer in this case recommended the defective insurance in reliance upon fraudulent misrepresentations about the existence of coverage and legality of the program which came from the RICO Defendants.

## IV

## AGENCY AND INFORMATION ALLEGATIONS

25.     The plaintiff alleges that in connection with the acts and events alleged herein, the RICO Defendants, and each of them, were acting in concert, participation, or collaboration with each other, authorized or ratified the acts of each other, were agents or employees of the other, and acted within the course and scope of such agency and/or employment. Accordingly, each RICO Defendant is jointly and severally liable for the acts of each other RICO Defendant as alleged herein.  The plaintiff alleges that in connection with the acts and omissions attributable to the Defendant Insurance Producers, each negligent Defendant Wholesale Insurance Producer and each negligent Defendant Retail Insurance Producer is only responsible for the losses attributable to those EWBPs to which each defendant is in privity of contract.

///

26.     All allegations made in this Complaint have been based on information and belief, except those allegations that pertain to plaintiff, which are based on his personal knowledge. Plaintiff's information and belief is based on, *inter alia,* the investigation conducted by plaintiff and plaintiff's attorneys after their retention.  Each and every allegation and factual contention contained in this Complaint has evidentiary support or, alternatively, pursuant to Federal Rule of Civil Procedure 11(b)(3), is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery by plaintiff or his counsel.

27.     The RICO Defendants, and each of them, attempted to prevent the 7,000 + EWBPs from discovering the fact that they had purchased the facade of health insurance by making false representations about the reasons for the failure of the payment of their claims.  The RICO Defendants, and each of them, also attempted to prevent Dillon from discovering sufficient information to prosecute this action by, among other things, deleting critical data from Employers Mutual LLC computers and removing premium and claims data from Employers Mutual LLC's offices.  Based upon Dillon's diligent work, he has only recently obtained sufficient information to know the identity of the defendants, the claims of the 7,000+ EWBPs, and the facts supporting this Complaint.

**V**

**GENERAL FACTUAL ALLEGATIONS**

**A. The Scheme of the RICO Enterprise**

28.     The enterprise commenced with the incorporation of Employers Mutual LLC in Nevada on July 28, 2000 by RICO Defendants Kokott and Angelos. RICO Defendant Graf was not identified on the corporate books of Employers Mutual LLC because he had a prior disciplinary record as the result of operating another insurance scam using the name of First Continental Life & Accident Insurance Company ("First Continental") without its knowledge or consent.  Graf's experience operating the prior fraudulent insurance scam involving First Continental made him the principal organizer of the subject RICO enterprise, which again used admitted insurers names without their permission. Kokott and Angelos were both in the construction industry and had no prior experience in insurance, ERISA, or operating insurance

1    plans.   Defendant Hanson was Defendant Graf's live-in girlfriend.   The decision making
2    structure of the enterprise was hierarchical with Kokott, Hanson and Angelos being subservient
3    to Graf.

4        29.      Between December 27, 2000 and February 15, 2001 RICO Defendants Kokott and
5    Angelos, following the instructions of Graf, established the 16 Nevada Associations referred
6    to above.  On January 29, 2001, Angelos, ostensibly on behalf of each of the 16 Nevada
7    Associations and Kokott, ostensibly on behalf of Employers Mutual LLC, executed 16 identical
8    agreements between each Association and Employers Mutual LLC.  On their face, the 16
9    agreements attempted to create relationships whereby Graf's 16 Nevada Associations would
10   provide health insurance to their respective members by buying insurance coverage from
11   admitted carriers, with, at a minimum, an A- rating, and Employers Mutual LLC would act as
12   a "trustee" of the premiums paid by the Employers Mutual Plans to each Association for the
13   purchase of said insurance and manage the affairs of each Association for a 25% fee.   In
14   reality, these incestuous agreements were entered into by alter egos of each corporation, with
15   no arms-length negotiations, for the sole and exclusive purpose of creating the RICO enterprise
16   which would serve as the facade of a legitimate  insurance program in which the RICO
17   Defendants could then sell the fraudulent health insurance and steal the premiums.

18       30.      All actions of the RICO Defendants which were performed to effectuate the goal
19   of stealing premiums were acts performed to the detriment of Employers Mutual LLC and
20   Graf's 16 Nevada Associations because the actions could not conceivably benefit these
21   entities. These entities made the RICO activities possible and profitable by providing a facade
22   of legitimacy for the illegal activities.

23       31.      Once the RICO enterprise was established (which was to create the facade of an
24   insurance program) the RICO Defendants set about to create and maintain a national
25   marketing network of legitimate insurance producers to sell the fraudulent health insurance.
26   To accomplish this task, the RICO Defendants falsely represented to the Defendant Wholesale
27   Insurance Producers and the Defendant Retail Insurance Producers that the members of Graf's
28   16 Nevada Associations were to be insured by a licensed insurance carrier with an A- or better

1  Best Insurance Rating.  Multiple false representations constituting predicate acts were made
2  by the RICO Defendants to the Defendant Insurance Producers as to the identity of the A-
3  rated licensed insurer providing the benefits to the participants through their membership in
4  Graf's 16 Nevada Associations.  Depending upon the time, person and situation, the RICO
5  Defendants represented, among other things, that the members of Graf's 16 Nevada
6  Associations were insured by Sun Life Insurance Company of Canada ("Sun Life"), United
7  Wisconsin Life Insurance Company ("United Wisconsin"), Golden Rule Insurance Company
8  ("Golden Rule"), a generic A- or better rated company, or  First Continental, a licensed
9  Domestic Insurance Company to be purchased by the RICO Defendants.

10      32.      For instance, on or about September 29, 2000, the RICO Defendants forged a letter
11  written on Sun Life's letterhead which purported to bind coverage for the members of Graf's
12  16 Associations.  The letter, purportedly executed by Linda L. Haithway, the Senior Vice
13  President of the Group Reinsurance and Market Development Division of Sun Life, stated as
14  follows:  "Pursuant to your request I am informing you that our company is willing to accept
15  your Association business as submitted for the desired October 1, 2000 effective date."

16      33.      The RICO Defendants, utilizing the U.S. Mail,  provided copies of the forged Sun
17  Life letter to Defendant Insurance Producers as proof that Graf's 16 Nevada Associations were
18  fully insured by a licensed carrier.  However, Sun Life has confirmed that: (i) the binder letter
19  is fraudulent; (ii) Linda Haithway could not be located as a past or present employee at Sun
20  Life; (iii) the logo used in the letter's letterhead had not been used after March 2000, yet the
21  letter was dated September 29, 2000 and Sun Life did not have a "Group Reinsurance and
22  Market Department" as represented in the letter.  Sun Life never agreed to provide insurance
23  to the participants of Graf's 16 Nevada Associations as represented by the RICO Defendants.

24      34.      In addition to the misrepresentation about coverage from Sun Life, the RICO
25  Defendants provided in the U.S. Mail the application forms that were required to be filled out
26  by each and every EWBP and their participants as a precondition to becoming insured.  The
27  application forms falsely represented to the EWBPs and their respective participants that the
28  "Association/Employer health plan being offered is an **insured plan**..." [emphasis added].  The

application forms also stated that "...the Association/Employer health plan being offered is a fully funded plan..." and the ". . . Plan is a fully funded health plan with coverage purchased through an A- (Excellent) or better insurance company". The facade of health insurance sold by the RICO Defendants was never insured by any insurer and never insured through an A- or better insurance company. The RICO Defendants never had authority to bind the coverage with an A-rated carrier as they had represented.

35.     On or about November 20, 2000, the RICO Defendants transmitted a fraudulent letter, utilizing the U.S. Mail, to the Defendant Insurance Producers to be retransmitted to the EWBPs, stating that:  "We are pleased to announce that all of our Association Plans being offered are in conjunction with United Wisconsin Life Insurance Company . . . United Wisconsin Life Insurance Company is rated A- (Excellent) by A.M. Best."  United Wisconsin never agreed to insure the members of Graf's 16 Nevada Associations.  The November 20, 2000 representation was false. In addition, Wisconsin Life had never granted the RICO Defendants the authority to bind coverage on its behalf.

36.     On or about January 2, 2001, Golden Rule executed an Independent Broker's Contract appointing Richard Wiest as a broker with the authority to submit applications for health coverage to Golden Rule.  In this agreement, Golden Rule retained the exclusive right, pursuant to its underwriting guidelines, to accept or reject the applicants submitted by Richard Wiest, and Richard Wiest never had the authority to bind Golden Rule to any insurance contract.  In addition, the Independent Broker's Contract appointed Richard Wiest as the broker for Golden Rule and not Employers Mutual LLC, an unlicensed entity from Nevada.

37.     Notwithstanding the above, on January 5, 2001, Richard Wiest executed a letter as the Director of Sales and Marketing for Employers Mutual LLC which falsely stated that:

> This letter is to notify you that our appointment to Golden Rule Insurance Company has been approved as of January 2, 2001. Pursuant to our exclusive agreement Employers Mutual and all the Associations shall be provided the Golden Rule health products as requested by the Board of Directors.

38.     On or about January 10, 2001, the RICO Defendants transmitted a fraudulent memorandum, utilizing the U.S. Mail, to the Defendant Insurance Producers to be

retransmitted to the EWBPs, stating that "the policy being issued to each participant is fully funded and fully insured." Additionally, the memo states that "All Associations are domiciled in Nevada and all participants are enrolled through one of the sixteen Nevada Associations. The applicant's specific association facilitates the purchase of the insurance policy from an A rated or better insurance company; and in most states the coverage is provided through the Golden Rule Insurance Company." Golden Rule never provided health insurance to the members of Graf's 16 Nevada Associations. Golden Rule never authorized the RICO Defendants to bind such coverage on its behalf.

39.    On or about October 16, 2001, Golden Rule filed suit against Employers Mutual LLC and others in the U.S. District Court for Nevada alleging trademark infringement and false, deceptive, and/or misleading practices. Golden Rule contends in that litigation that on or about January 23, 2001 it first became aware that the RICO Defendants were using the GOLDEN RULE® name and mark to sell health insurance. At said time, Golden Rule received a packet of information from a Florida insurance producer in which the RICO Defendants claimed to have an exclusive relationship with Golden Rule. This packet included the January 10, 2001 memo referred to above which stated that Employers Mutual LLC was providing the insurance for its Program through Golden Rule, an A-rated carrier.

40.    As a result, on January 23, 2001 and then again on March 8, 2001, Golden Rule contacted the RICO Defendants to inform them that Golden Rule's product lines and marks were the property of Golden Rule and to express concern that the RICO Defendants were using the GOLDEN RULE® name and mark without Golden Rule's authorization. Golden Rule demanded that the RICO Defendants cease claiming an affiliation with Golden Rule and that it send a communication to its marketing representatives stating that Golden Rule was not associated in any way with the insurance being sold by the RICO Defendants.

41.    The RICO Defendants, however, did not cease claiming an affiliation with Golden Rule. In early April 2001, the Colorado Department of Insurance ("Colorado DOI") contacted Golden Rule, and stated that it, along with several other state insurance

///

1  departments, were investigating the RICO Defendants and Golden Rule's ostensible ongoing

2  affiliation with them.

3      42.     In late July 2001, and continuing into August and September of 2001, Golden Rule

4  received new inquiries from Golden Rule's marketing service centers and insurance producers

5  throughout the country asking whether Golden Rule did have the relationship with the RICO

6  Defendants as was being represented by the RICO Defendants.  Several of the inquiries

7  enclosed copies of promotional material the writers had received from the RICO Defendants,

8  which continued to falsely state that Golden Rule was providing insurance to Graf's 16

9  Nevada Associations and their members.

10     43.     On or about August 31, 2001, Golden Rule sent a letter to each state Insurance

11 Commissioner, with copies to the fraud department of each states' Department of Insurance,

12 stating that "Golden Rule does not have, nor has it ever had," any role whatsoever in the RICO

13 Defendants' program and asking for the commissioners' "assistance in stopping the misuse of

14 [the Golden Rule] name...".

15     44.     Golden Rule has never consented to any use by the defendants of its GOLDEN

16 RULE®  trademark or trade name.  On the contrary, Golden Rule has demanded that

17 defendants not use the  GOLDEN RULE® name and mark, nor imply any affiliation between

18 the defendants and Golden Rule.  The RICO Defendants, however, refused to comply with

19 Golden Rule's demands and continued their unauthorized use of the  GOLDEN RULE® mark.

20 Golden Rule does not and has never provided insurance to the members of Graf's 16 Nevada

21 Associations, the participants of the 7,000+ Employers Mutual Plans which are now

22 represented by Dillon.

23     45.     On or about June 29, 2001, after getting caught using Golden Rule's name, the

24 RICO Defendants transmitted another false letter, utilizing the U.S. Mail, to the Defendant

25 Insurance Producers to be retransmitted to the EWBPs, this time stating that ". . . Employers

26 Mutual is in the process of seeking to purchase a Best Rated insurance company licensed in

27 most states.  Additionally, a second insurance company is also in the process of being

28 purchased to complete our required states.  Upon regulatory approval all plans will then

1  become fully insured.  An official announcement naming the companies will be made shortly,

2  once our due diligence has been completed."  The June 29, 2001 letter was, like all others,

3  another false representation made to the Defendant Insurance Producers to keep the premiums

4  flowing to the RICO Defendants.

5       46.      The RICO Defendants never intended to purchase one or two Best Rated Insurance

6  Companies and never had the economic  wherewithal to purchase said companies.  Because

7  of Graf's prior experience falsely utilizing the name of First Continental without First

8  Continental's permission, Graf knew that First Continental was potentially for sale.  Without

9  mentioning Graf's name, Defendant Kokott, on behalf of Employers Mutual LLC, made inquiry

10  at First Continental about a possible acquisition.  Based solely on this inquiry, the RICO

11  Defendants then misrepresented to the Defendant Insurance Producers that the acquisition of

12  First Continental was "imminent" and the Defendant Insurance Producers should not move

13  their clients and keep the premiums flowing to the RICO Defendants.

14       47.      On or about July 31, 2001, First Continental advised Kokott of Employers Mutual

15  LLC that the Texas Department of Insurance had advised First Continental that it had been

16  contacted by a number of Texas agents who described the Employers Mutual LLC acquisition

17  as being "imminent".  This notification came shortly after First Continental was contacted by

18  a Florida Insurance Producer who had disclosed that First Continental's name was being used

19  to market insurance in Florida by Employers Mutual LLC.  First Continental ordered Employer's

20  Mutual LLC to cease and desist using its name to market insurance.

21       48.      By the fall of 2001, many of the 7,000+ EWBPs began to discover that their

22  participants' claims were not being paid and, in response, complaints started to be made to

23  Employers Mutual LLC.  In response, Employers Mutual LLC terminated its relationship with

24  its Nevada based third party claims administrator, Sierra Administration, and blamed this

25  administrator for the fact that the payment of medical claims had been delayed.  Employers

26  Mutual LLC then assured all of the Defendant Insurance Producers, who in turn assured all of

27  the 7,000+ EWBPs and the 30,000 participants, that claims would be paid.  For instance, on

28  ///

1   November 6, 2001, Employers Mutual LLC, utilizing the U.S. Mail, sent a false letter to all

2   Defendant Insurance Producers and to all participants stating that:

3       "We appreciate your patience as we work through the transition
        from Sierra Administration.

4

5       Enclosed is a questionnaire with October and November billing.
        Please complete the questionnaire and submit it along with your
        payment to Employers Mutual, LLC, 711 South Carson, Ste. 5,

6       Carson City, NV 89701

7       Please note that all claims are being reconciled and payments
        are being sent to your providers. Also you can be assured that

8       your membership and health benefits are in tact and we will
        continue to provide you with benefits as we work to resolve

9       the many transitional issues."

10      49.     Based upon these misrepresentations, and others, the RICO Defendants were able

11  to create a national marketing network of insurance producers who relied upon these various

12  misrepresentations and sold the facade of health insurance to the 7,000+

13  Employers Mutual Plans for the benefit of the RICO Defendants who then stole the premiums

14  paid by the Employers Mutual Plans.  Based upon these misrepresentations, and others, the

15  RICO Defendants were able to maintain the operation of the RICO enterprise until plaintiff

16  was appointed Independent Fiduciary on December 13, 2001.

17      50.     Based upon these ongoing and continuous misrepresentations transmitted by the

18  RICO Defendants to the Defendant Insurance Producers and then negligently retransmitted

19  by the Defendant Insurance Producers to the 7,000+ EWBPs and their participants, all

20  defendants are estopped to argue that any applicable statute of limitations started to run prior

21  to the appointment of Dillon as Independent Fiduciary on December 13, 2001.  To argue that

22  the statute started to run any earlier would be an attempt to benefit from the fraud committed

23  by the RICO Defendants and, therefore, a ratification of that fraud.

24      51.     Premiums stolen by the RICO Defendants from the premiums paid by the 7,000+

25  Employers Mutual Plans include, among others, the following illegal transfers:

26          (a)     From January 2001 to October 2001, $830,395.00 was transferred from

27  Employers Mutual LLC to Columbia Health Network, Inc. ("Columbia"), a corporation owned

28  and controlled through Graf by his live-in girlfriend RICO Defendant Kari Hanson.  Columbia

1 was established as an alleged provider network, or service provider, but in reality it was part
2 of the RICO enterprise and used solely as a tool to deplete the premiums paid by the 7,000+
3 Employers Mutual Plans for the advantage and gain of the RICO Defendants pursuant to the
4 scheme of the RICO enterprises.

5        (b)      From January 2001 to October 2001, $216,451.00 was transferred from
6 Employers Mutual LLC to Western Health Network ("Western"), a corporation owned and
7 controlled by the RICO Defendants.   Western was ostensibly established as an alleged
8 provider network, or service provider, but in reality it was also part of the RICO enterprise and
9 used  solely as another tool to deplete the premiums paid by the 7,000+ Employers Mutual
10 Plans for the advantage and gain of the RICO Defendants pursuant to the scheme of the RICO
11 enterprise.

12        (c)      From January 2001 to October 2001, $187,484 was transferred from
13 Employers Mutual LLC to WRK Investments, Inc. ("WRK"), a corporation owned and
14 controlled by the RICO Defendants. WRK was established as an alleged investment advisor
15 or service provider, but in reality it was part of the RICO enterprise and used solely as another
16 tool to deplete the premiums paid by the 7,000+ Employers Mutual Plans for the advantage
17 and gain of the RICO Defendants pursuant to the scheme of the RICO enterprise.

18        (d)      From January 2001 to October 2001, $132,484 was transferred from
19 Employers Mutual LLC to Graf Investments, a corporation owned and controlled by Graf.  Graf
20 Investments was established as an alleged investment advisor or service provider, but in reality
21 it was also part of the RICO enterprise and used solely as another tool to deplete the premiums
22 paid by the 7,000+ Employers Mutual Plans for the advantage and gain of the RICO
23 Defendants pursuant to the scheme of the RICO enterprise.

24        (e)      From January 2001 to October 2001, approximately $100,000 was
25 transferred directly to Graf's live-in girlfriend, RICO Defendant Kari Hansen, for, allegedly,
26 services rendered to Employers Mutual LLC, but in reality solely for the benefit of the RICO
27 enterprise because Graf's girlfriend never acted as an agent or employee of Employers Mutual
28 ///

1   LLC because she never acted for the benefit of Employers Mutual LLC but always acted to the
2   detriment of the corporation.

3   　　　　(f) From January 2001 to October 2001, approximately $100,000 was transferred
4   directly to Graf for, allegedly, services rendered to Employers Mutual LLC, but in reality solely
5   for the benefit of the RICO enterprise because Graf never acted as an agent or employee of
6   Employers Mutual LLC because he never acted for the benefit of Employers Mutual LLC but
7   always acted to the detriment of the corporation.

8   　52.　　The scheme of the RICO enterprise, as with all Ponzi schemes, recognized that the
9   creation and maintenance of the facade of an insurance program required the use of premiums
10  to pay some claims, the fees for attorneys, the fees for third party administrators, the
11  commissions of agents, the fees of the Preferred Provider Network and other business
12  expenses. These payments, however, were made only in furtherance of (i) the scheme to steal
13  premiums and (ii) to provide a defense for the RICO Defendants that the failure of the program
14  was the result of bad business judgment, not larceny.

15  **B. The Predicate Acts of the RICO Defendants in Furtherance of the Ongoing Scheme**

16  　53.　　In furtherance of the scheme and to effectuate the objects thereof, Graf, Kokott and
17  Angelos each committed overt acts including, but not limited to, the following:

18  　　　　(a)　　Graf, Kokott, Hanson and Angelos organized a network of Wholesale
19  Insurance Producers and Retail Insurance Producers to market to their clients the health
20  insurance to cover the members of Graf's 16 Nevada Associations by the alleged admitted
21  carriers;

22  　　　　(b)　　Graf, Kokott, Hanson and Angelos made multiple false statements by
23  misrepresenting to the Defendant Insurance Producers that admitted carriers had agreed to
24  insure the members of Graf's 16 Nevada Associations and transmitted in the U.S. Mail and
25  over the interstate telephone system the false statements to the Wholesale Insurance Producers
26  and Retail Insurance Producers who relied thereon;

27  　　　　(c)　　Graf, Kokott, Hanson and Angelos opened accounts at various banks,
28  deposited the premiums paid by the 7,000 + Employers Mutual Plans into those accounts and

1  then misappropriated those funds by transferring them to corporate members of the enterprise

2  to then use the funds for their own individual advantage and gain;

3        (d)        Graf, Kokott, Hanson and Angelos, as part of the pattern of racketeering,

4  reinvested some of the premium dollars back into the enterprise in order to perpetuate its

5  maintenance and operation by paying some claims, the fees of attorneys, the commissions of

6  producers, the fees of third party administrators, the fees of other professionals and other

7  business expenses;

8        (e)        Graf, Kokott, Hanson and Angelos made misrepresentations in the U.S.

9  Mail and over the interstate phone system to EWBPs and participants about their intent to pay

10  claims and their reasons for the delay and refusal to pay claims so that they could fraudulently

11  prolong the insurance operation to loot additional premiums; and

12        (f) Graf, Kokott, Hanson and Angelos diverted premiums into their personal

13  accounts for no consideration as part of the scheme of the RICO enterprise.

14  **C. The Negligent Acts and Omissions of the Defendant Insurance Producers**

15  54.    The first and last line of defense to prevent insurance fraud is the diligent licensed

16  insurance producer.  The current economic environment has generated escalating premiums

17  and restrictive underwriting in the health insurance industry.  This "hard market" has created

18  a breeding ground for unscrupulous individuals to market fraudulent alternatives to standard

19  health insurance coverage to unsophisticated consumers who, regrettably, assume that their

20  insurance must be bona fide because this is the United States and they paid their premiums.

21  55.    The 400 Defendant Insurance Producers named in this Complaint failed at the

22  simple task of performing adequate due diligence before recommending the subject insurance

23  to their respective clients.  Numerous red flags were present to alert a competent insurance

24  producer to the fact that he or she was being had at the expense of the client EWBPs.

25  Examples of red flags which would have raised the suspicion of a reasonably prudent

26  insurance producer included, among others, the following:

27  ///

28  ///

(a)      Employers Mutual LLC was incorporated on July 28, 2000, and Graf's 16 Nevada Associations were incorporated between December 17, 2000 and February 15, 2001. Financial data on premium flow reflects that the marketing of this fraudulent insurance started in earnest in February of 2001. "Seasoning," a fundamental concept in the insurance industry, means that the people or entities that the insurance producers are dealing with have been in business for a reasonable length of time to establish a reputation within the industry for competency and integrity.  The Defendant Insurance Producers failed to recognize that Employers Mutual LLC and Graf's 16 Nevada Associations were not seasoned and, therefore, they had no reputation within the industry for competency and integrity for the insurance producer to rely upon when the RICO Defendants represented they had authority to bind coverage for the A-rated carriers and did, in fact, bind such coverage.

(b)      The Defendant Insurance Producers also failed to perform any investigation to determine whether Employers Mutual LLC was physically capable of operating the complex business of insurance administration as was required given the promises of performance made by the RICO Defendants.  A cursory investigation by all Defendant Insurance Producers would have revealed that:  (i) Employers Mutual LLC was not licensed in any capacity whatsoever in the State of Nevada; (ii) Employers Mutual LLC had no audited financial reports and had not obtained any bonding to act as a "trustee" of the $15,000,000 plus in premiums paid over to Employers Mutual LLC to buy insurance from an admitted carrier; (iii) Employers Mutual LLC, although incorporated in Nevada, had no employees in Nevada; (iv) Employers Mutual LLC's business address in Nevada was a mail drop at Mail Boxes Etc.; (v) Kokott and Angelos, the ostensible principals of Employers Mutual LLC, were in the construction business and had no experience in insurance; (vi) Graf, the alter ego of Employers Mutual LLC, had been accused by the California Department of Insurance in October of 1998 of utilizing First Continental's name to sell insurance without its consent and "acting as an insurer without certificate of authority from the Insurance Commissioner; falsely representing to agents and subscribers that the health plans were underwritten by California-licensed insurance companies; receiving premium; paying claims; incurring outstanding

1  unpaid claims; and paying personal expenses from premium monies received"; and (vii) Graf

2  had been Ordered to Cease and Desist the above-described activities and Ordered to pay the

3  outstanding unpaid claims, which he did not do.

4         (c)      The Defendant Insurance Producers also failed to perform any

5  investigation into the purpose for the creation and maintenance of Graf's 16 Nevada

6  Associations.  Membership in one of Graf's 16 Nevada Associations was a precondition to

7  obtaining insurance coverage from one of the alleged admitted carriers.  Typically, an

8  association is created and governed by its members to promote the social, business and/or

9  educational interests of its members.  Membership is offered to persons who share a common

10  interest in something other than the purchase of insurance.  Graf's 16 Nevada Associations

11  were owned, operated and controlled by the RICO Defendants and not the members of the

12  Associations.  Membership in Graf's 16 Nevada Associations was provided to the employees

13  of unrelated heterogeneous employers with no pre-existing relationship between them who

14  were simply desiring to purchase insurance for their employees.  The fact that Graf's 16

15  Nevada Associations were created as a vehicle to provide the facade of health insurance was

16  another red flag missed by the Defendant Insurance Producers.  In addition, the concept of

17  selling membership in an association to obtain health insurance coverage issued by an

18  admitted carrier is inherently unreasonable.  It is the cart leading the horse.  Generally, a pre-

19  existing association buys health insurance from an admitted carrier for its existing members

20  as one of many benefits of membership.  Selling association membership to obtain insurance

21  is nothing more than selling highly suspect insurance.

22         (d)      The Defendant Insurance Producers failed to perform any investigation

23  to determine whether Employers Mutual LLC had been granted the authority to bind coverage

24  by any of the admitted carriers referred to by the RICO Defendants as the insurers on the risk.

25  A simple telephone call to Sun Life, United Wisconsin, Golden Rule or First Continental by

26  the 400 Defendant Insurance Producers would have revealed that Employers Mutual LLC was

27  not authorized as an agent to bind coverage from these carriers for the 7,000+ EWBPs

28  victimized in this scam.  In addition, the Defendant Insurance Producers failed to realize that

1    there was no admitted carrier on the risk when ID cards were presented to their respective
2    clients without the name of a licensed insurer listed thereon.

3            (e)      The low premium rates and high commission structure were additional
4    red flags missed by the Defendant Insurance Producers.  Morbidity does not change when a
5    participant goes from one insurance plan to another.  Given the increase in premiums charged
6    by admitted carriers in the industry at this point in time, it was a red flag for a competent
7    insurance producer when Employers Mutual LLC offered similar coverage at reduced rates.
8    The reasonable insurance producer's scrutiny must increase when the program offers high
9    commissions which cannot be afforded without a concomitant rise in premiums charged.

10            (f) Employers Mutual Casualty Company is a large Property & Casualty Insurer
11    domiciled in Iowa and licensed in all 50 states.  The name Employers Mutual LLC is
12    misleadingly similar to Employers Mutual Casualty Company and, most likely, violates the
13    latter's registered trade name.  The use of the name Employers Mutual LLC would have raised
14    a red flag to a reasonably prudent insurance producer, but did not cause sufficient concern to
15    the Defendant Insurance Producers named in this Complaint.

16            (g)      On August 14, 2001 the Florida Department of Insurance issued a Cease
17    and Desist Order against Employers Mutual LLC and Graf's 16 Nevada Associations accusing
18    them of operating an illegal health insurance program.  Such an Order would have been
19    instantly communicated to the National Association of Insurance Commissioners (NAIC) which
20    serves as a clearinghouse of information relevant to insurance regulation throughout the
21    United States. The NAIC would have then passed this information on to its members, who are
22    the Commissioners of Insurance from each state of the United States and its territories.  After
23    August 14, 2001, public information was available to all Defendant Insurance Producers
24    concerning the nefarious activity of the RICO Defendants and their operation of Employers
25    Mutual LLC. After August 14, 2001, it was additionally unreasonable for Defendant Insurance
26    Producers to place EWBPs into the fraudulent insurance program marketed by the RICO
27    Defendants.

28    ///

56. The 400 Defendant Insurance Producers were negligent in recommending the purchase of the fraudulent insurance to the 7,000+ Employers Mutual Plans.

57. The 400 Defendant Insurance Producers were negligent again, on a daily basis, when they failed to inform their clients of the need to obtain alternative coverage. This failure was ongoing and continuous, but became especially egregious once the Florida Department of Insurance had issued its Cease and Desist Order on August 14, 2001. The Defendant Insurance Producers' failure to move their clients constitutes additional daily acts of negligence from the inception of each policy to December 13, 2001, when Dillon was Independent Fiduciary.

## VI

## FIRST CLAIM FOR RELIEF

## 18 U.S.C. §1962(c)

## Civil RICO Against the RICO Defendants

58. Plaintiff refers to and incorporates by reference each allegation contained in Paragraphs 1 through 57 of the Complaint as through fully set forth herein.

59. Graf, Kokott, Hanson and Angelos are persons within the meaning of 18 U.S.C. §1961(3) and are the persons involved in the creation and maintenance of a racketeering enterprise. Graf, Kokott, Hanson and Angelos, and each of them, have been employed by and/or associated with the enterprise and, while so employed and/or associated, have conducted, directed, managed or participated in, either directly or indirectly, the conduct of the affairs and business of the enterprise through the described pattern of racketeering activity.

## A. The Fraudulent Scheme

60. Beginning in July of 2000 to the present, Graf, Kokott, Hanson and Angelos created and maintained a series of corporations using the instrumentalities of interstate commerce to effectuate the ongoing financial crimes enterprise of collecting premiums under the guise of offering valid insurance issued by admitted carriers and distributing the

///

1   premium money amongst themselves and into the enterprise without buying the insurance

2   from admitted carriers as promised.

3   **B.  The Enterprise**

4       61.     The enterprise was the network of corporations and associations formed by the

5   RICO Defendants to create the facade of a legitimate insurance program through the

6   pattern of racketeering activity described herein.  The network itself, within the meaning of

7   RICO, was a separate enterprise organized, operated, managed and directed by Graf,

8   Kokott and Angelos during its extended life.  The enterprise conducted its business and

9   transacted its affairs in various locations in the United States by using interstate commerce

10  and affecting interstate commerce and was at all times an enterprise as defined in 18

11  U.S.C. §1961(4).

12  **C.  Pattern of Racketeering Activity**

13      62.     In furtherance of the ongoing scheme, the RICO Defendants, and each of them,

14  committed predicate acts between July 28, 2000 and December 13, 2001 including mail

15  fraud and wire fraud.

16      63.     Graf, Kokott, Hanson and Angelos sent or caused to be sent in the U.S. Mail to

17  the Wholesale Insurance Producers, the Retail Insurance Producers and the EWBPs

18  numerous misleading correspondence, invoices for insurance, certificates of insurance

19  coverage, and supporting documentation which documents were relied upon by the

20  recipients to the detriment of the 7,000+ Employers Mutual Plans because the RICO

21  Defendants had not purchased insurance from admitted carriers as promised.

22      64.     Graf, Kokott, Hanson and Angelos, and each of them, repeatedly used or

23  caused to be used the interstate telephone system as an instrument to make the same

24  misleading statements that were made through the use of the U.S. Mail.  Additionally, from

25  time to time the insider RICO Defendants would wire transfer money generated from the

26  ongoing operation of the enterprise to bank accounts in the United States to further

27  perpetuate the scheme by reinvestment back into the enterprise.

28  ///

65.   As the actual and proximate cause of the operation of the enterprise and the commission of the predicate acts committed by the RICO Defendants, and each of them, of mail fraud, wire fraud and the investment of funds into the enterprise, the plaintiff has been damaged as follows:

(a)   The 7,000+ Employers Mutual Plans identified herein have suffered property damage by the payment of premiums for non-existent insurance in an amount exceeding $15,000,000; and

(b)   The 7,000+ Employers Mutual Plans referred to herein have suffered property damage by the occurrence of approximately $50,000,000 in claims payable to their employees under their respective promised insurance policies which claims have not been paid and would have been paid had the 7,000+ EWBPs bought alternative and legitimate insurance.

66.   Pursuant to 18 U.S.C. §1962, the damages incurred by the 7,000+ Employers Mutual Plans as the result of the conduct of the RICO Defendants should be trebled.

## VII

## SECOND CLAIM FOR RELIEF

### 18 U.S.C. §1962(d)

### Conspiracy to Commit Civil RICO Against the RICO Defendants

67.   Plaintiff refers to and incorporates by reference each allegation contained in Paragraphs 1 through 66 of the Complaint as though fully set forth herein.

68.   Graf, Kokott, Hanson and Angelos, and each of them, have been employed by and/or associated with the enterprise and, while so employed and/or associated, have conducted, directed, managed or participated in, either directly or indirectly, the conduct of the affairs and business of the enterprise through the above-described pattern of racketeering activity. Graf, Kokott, Hanson and Angelos have all conspired to participate in the RICO enterprise and have knowingly agreed to commit the predicate acts.

69.   As the actual and proximate cause of the operation of the enterprise and the commission of the predicate acts committed by the RICO Defendants, and each of them, of

1  mail fraud, wire fraud and the investment of funds into the enterprise and the conspiracy to

2  commit these acts, the plaintiff has been damaged as follows:

3         (a)      The 7,000+ Employers Mutual Plans identified herein have suffered

4  property damage by the payment of premiums for non-existent insurance in an amount

5  exceeding $15,000,000; and

6         (b)      The 7,000+ Employers Mutual Plans identified herein have suffered

7  property damage by the occurrence of approximately $50,000,000 in claims payable to their

8  participants under the respective promised insurance policies which claims have not been

9  paid. The claims would have been paid had the EWBPs bought legitimate health insurance for

10  their participants.

11     70.     Pursuant to 18 U.S.C. §1962, the damages incurred by the 7,000+ Employers

12  Mutual Plans as the result of the conduct of the RICO Defendants should be trebled.

13  **VIII**

14  **THIRD CLAIM FOR RELIEF**

15  **<u>Fraud Against the RICO Defendants</u>**

16     71.     Plaintiff refers to and incorporates by reference each allegation contained in

17  Paragraphs 1 through 70 of the Complaint as though fully set forth herein.

18     72.     Graf, Kokott, Hanson and Angelos sent or caused to be sent in the U.S. Mail and

19  over the Internet to the Wholesale Insurance Producers, the Retail Insurance Producers and

20  the EWBPs numerous misleading correspondence, invoices for insurance, certificates of

21  insurance coverage, and supporting documentation which documents were relied upon by the

22  recipients to the detriment of the 7,000+ Employers Mutual Plans because they paid

23  premiums for non-existent insurance.

24     73.     As the actual and proximate cause of the fraud committed by the RICO Defendants,

25  and each of them, the plaintiff has been damaged as follows:

26  ///

27  ///

28  ///

(a)      The 7,000+ Employers Mutual Plans identified herein have suffered property damage by the payment of premiums for non-existent insurance in an amount exceeding $15,000,000; and

(b)      The 7,000+ Employers Mutual Plans identified herein have suffered property damage by the occurrence of approximately $50,000,000 in claims payable pursuant to their respective promised insurance policies (which claims have not been paid). The claims would have been paid had the EWBPs bought legitimate health insurance for their participants.

## IX

## FOURTH CLAIM FOR RELIEF

### Breach of Contract to Procure Valid Insurance Against

### the Defendant Wholesale and Retail Insurance Producers

74.      Plaintiff refers to and incorporates by reference each allegation contained in Paragraphs 1 through 73 of the Complaint as though fully set forth herein.

75.      A contract to procure valid health insurance arises between an insurance producer and its client after the client selects an insurance program offered by the insurance producer. Implicit in the contract to procure is the promise by the insurance producer to offer only an insurance program which complies with the law, is real and which the insurance producer has authority to offer.

76.      The 7,000+ Employers Mutual Plans entered into individual contracts with each of their respective Defendant Retail Insurance Producers and Defendant Wholesale Insurance Producers to procure valid medical insurance for the participants of each respective EWBP, in exchange for a percentage of the premiums paid.

77.      Each and every one of the 7,000+ Employers Mutual Plans complied with the terms of their respective contracts by selecting the insurance offered by the Defendant Insurance Producers and by paying premiums, a percentage of which was paid to each respective Defendant Retail Insurance Producer and Defendant Wholesale Insurance Producer as commissions.

78.     The Defendant Retail Insurance Producers and Defendants Wholesale Insurance Producers breached their contracts to procure valid insurance with each corresponding Employers Mutual Plan by failing to procure the insurance issued by an A-rated carrier as promised.

79.     As a proximate result of the breaches by the Defendant Retail Insurance Producers, and Defendant Wholesale Insurance Producers, the plaintiff has been damaged in the amount of approximately $50,000,000 in unpaid or unreimbursed medical expenses and prescription drug expenses and over $15,000,000 in wasted premiums.  Additional damage caused by this breach is the amount paid by Plaintiff to adjudicate the unpaid claims, which amount will be proven at the time of trial.

X

**FIFTH CLAIM FOR RELIEF**

**Professional Malpractice Against the Defendant**

**<u>Wholesale Insurance Producers and Retail Insurance Producers</u>**

80.     Plaintiff refers to and incorporates by reference each allegation contained in Paragraphs 1 through 79 of the Complaint as though fully set forth herein.

81.     In performing professional services for a client, a wholesale insurance producer and a retail insurance producer has the duty to have that degree of learning and skill ordinarily possessed by reputable insurance producers practicing in the same or a similar locality and under similar circumstances, and to use reasonable diligence and best judgment in the exercise of professional skill and in the application of learning, in an effort to accomplish the purpose for which the professional was employed.

82.     In performing professional services for their respective clients, the Defendant Wholesale Insurance Producers and the 400 Defendant Retail Insurance Producers, and each of them, breached their duty to use the care and skill ordinarily used by reputable insurance producers, all to the detriment of the 7,000+ EWBPs represented by Dillon, in the following particulars:

///

1          (a)      They failed to confirm with Sun Life, United Wisconsin, Golden Rule
2 and/or First Continental that the RICO Defendants and/or Employers Mutual LLC were
3 authorized to bind coverage for the 7,000+ Employers Mutual Plans;

4          (b)      They failed to confirm with Sun Life, United Wisconsin, Golden Rule
5 and/or First Continental that said carriers had, in fact, agreed to provide health insurance
6 coverage to the 30,000 participants of the 7,000+ Employers Mutual Plans;

7          (c)      They failed to identify the generic A- rated insurer that the RICO
8 Defendants represented was insuring their clients, and then failed to contact that alleged
9 generic A- rated company to confirm that it had, in fact, agreed to provide health insurance
10 coverage to the 30,000 participants of the 7,000+ Employers Mutual Plans;

11         (d)      They failed to investigate Employers Mutual LLC and Graf's 16 Nevada
12 Associations to determine the propriety of the insurance program offered by the RICO
13 Defendants;

14         (e)      They failed to obtain the insurance from a licensed company as
15 promised, and instead sold the 7,000+ EWBPs non-existent insurance;

16         (f) They failed to notify the 7,000+ Employers Mutual Plans  that Employers
17 Mutual LLC was a fraud and failed to move their clients into legitimate replacement programs
18 once they discovered it was a fraud or once they should have discovered it was a fraud, which
19 was immediately upon inception of the policy and certainly no later than August 14, 2001
20 when the Florida Department of Insurance issued its Order to Cease & Desist.

21    83.     Said professional malpractice was a cause of the plaintiff's damages in the
22 approximate amount of $50,000,000 in unpaid or unreimbursed medical expenses and
23 prescription drug expenses and wasted premiums in the amount of over $15,000,000, the
24 exact amount to be proven at trial.  Additional damage caused by the malpractice is the cost
25 incurred by Dillon to adjudicate the claims and attorneys fees incurred in the prosecution of
26 this action, the exact amount to be proven at trial.

27 ///

28 ///

**XI**

**SIXTH CLAIM FOR RELIEF**

**Breach of Warranty of Authority Against RICO Defendants, Defendants**

**Wholesale Insurance Produces and Defendant Retail Insurance Producers**

84.     Plaintiff refers to and incorporates by reference each allegation contained in Paragraphs 1 through 83 of the Complaint as though fully set forth herein.

85.     When an agent acts without authority or in excess of his authority granted by the principal, he or she is liable for breach of an implied warranty that the agent is authorized to speak on behalf of and bind the principal.  The detriment caused by the breach of the warranty of authority of an agent is deemed to be the amount that could have been recovered from the principal on the contract if the warranty had been complied with, together with reasonable expenses of legal proceedings taken in good faith to enforce the promised obligation of the alleged principal against the agent.

86.     The RICO Defendants, Defendant Wholesale Insurance Producers and Defendant Retail Insurance Producers expressly and impliedly warranted to the 7,000 + EWBPs that they were authorized and could bind coverage for the 7,000 + Employers Mutual Plans and their participants with  Sun Life, United Wisconsin, Golden Rule, First Continental and/or some generic A-Rated carrier.  These alleged principals did not authorize the defendants to bind such coverage, and the defendants, and each of them, breached their warranties of authority by representing to the 7,000 + EWBPs that such coverage had in fact been bound.

87.     As the actual and proximate cause of the breach of the warranty of authority by each defendant, the plaintiff has been damaged as follows:

(a)     The 7,000 + Employers Mutual Plans identified herein have suffered damage by the payment of premiums for non-existent insurance in an amount exceeding $15,000,000; and

(b)     The 7,000 + Employers Mutual Plans referred to herein have suffered damage by the occurrence of approximately $50,000,000 in claims payable to their employees under their respective promised insurance policies which claims have not been

1   paid and would have been paid had the 7,000+ EWBPs bought alternative and legitimate

2   insurance or had the defendants been authorized to bind coverage with the A-rated carriers

3   as promised.

4           (c)       Plaintiff has been compelled to file the subject litigation in good faith and

5   will incur costs and expenses to recover the amount that would have been paid by the

6   principal carriers had defendants been authorized to bind coverage as alleged.  Plaintiff has

7   also been compelled to expend funds for claims administration which adjudication process

8   would have been paid for by the A-rated carriers had they in fact bound coverage, as

9   promised.

10                                      **XII**

11                              **PRAYER FOR RELIEF**

12          WHEREFORE, plaintiff Dillon, on behalf of the 7,000+ Employers Mutual Plans, prays for

13   judgment against all defendants, as follows:

14  **A. As to the RICO Claims**

15      1.      For damages arising from the injury to plaintiff's property from the predicate acts

16   and the operation of the enterprise;

17      2.      For treble damages; and

18      3.      For attorneys fees.

19  **B. As to All Other Applicable Claims For Relief**

20      1.      For unpaid or unreimbursed claims of approximately $50,000,000 payable

21   pursuant to the respective promised insurance policies or if unpaid claims do not exceed

22   wasted premiums;

23      2.      For wasted premiums of over $15,000,000;

24      3.      For pre-judgment interest on all claims to which plaintiff is entitled;

25      4.      For costs of this action including reasonable attorneys fees as afforded by any

26   applicable law and the costs of claims administration;

27      5.      For punitive damages, if applicable;

28   ///

6.     For the fees of the Independent Fiduciary as permitted pursuant to local Rule 54-8; and

7.     For all such other relief as the court deems proper.

DATED: February 28, 2003          HOLLISTER & BRACE

                                  By:_____
                                       ROBERT L. BRACE

DATED: March 3, 2003              LIONEL SAWYER & COLLINS

                                  By:_____
                                       RICHARD W. HORTON
                                       Attorneys for Plaintiff

1

## DEMAND FOR JURY TRIAL

2     Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by jury on all

3 issues so triable as a matter of right in this action.

4

5

6 DATED: February 28 , 2003                   HOLLISTER & BRACE

7

8                                            By: _____

9                                                ROBERT L. BRACE

10

11 DATED: ~~February~~ March 3 , 2003          LIONEL SAWYER & COLLINS

12

13

14                                            By: _____

15                                                RICHARD W. HORTON

16                                                Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

F:\MATTER\WK3\6583-001\pldgs\COMPLAINT.wpd

## EXHIBIT 1

## DEFENDANT RETAIL INSURANCE PRODUCERS

AAA Insurance Services
6054 Graham C Road
Meridian, MS  39307

ADR Insurance Services, Inc.
13478 Andova Drive
Largo, FL  34644-4633

Advanced Marketing
7100-39 Fairway Drive, Ste. 225C
Palm Beach Gardens, FL  33418

Affordable Insurance Options
3061 Pepperwood Lane
Clearwater, FL  33761

AFM Insurance Group
2995 LBJ Freeway, Suite 200
Dallas, TX  75234

Humayun Bashir Afzal
555 Spring Park Center Blvd. #12105
Spring, TX  77373-8259

Agent Coalition of America, Inc.
c/o Dorais & Grattan
5951 Encina Road, Ste. 104
Goleta, CA  93117

Timothy Alder
GMI Financial Corp
403 Main Street
P.O. Box 306
Safford, AZ  85548

Michael Alexander
114 W. High Oaks Circle
P0 Box 12207
Spring, TX  77391

All Florida Insurance Services Inc
3724 Beach Blvd.
Jacksonville, FL  32207

Alliance for Affordable Health
5225 Katy FWY #605
Houston, TX  77035

John Amann
18903 Artesian Way
Humble, TX  77346

American Benefit Society, Inc.
141 Ganttown Road E.
Turnersville, NJ  08012-1676

# EXHIBIT 1

Thomas Armstrong
Stockman's Insurance
P. O. Box 1660
Minden, NV  89423

John Kadlec Arnold
2460 Falmouth Road
Maitland, FL  32751

Christopher S. Ashiotes
American Benefit Society, Inc.
141 Ganttown Road E.
Turnersville, NJ  08012-1676

R. A. Ashworth
3206 Bain Place
Tyler, TX  75701

Associated Agents of America, Inc.
c/o Dorais & Grattan
5951 Encina Road, Ste. 104
Goleta, CA  93117

Association Benefits Solution, Inc.
1929 Buford Boulevard
Tallahassee, FL  32308-4466

AXA Advisors, LLC
3625 Duval Road, #1324
Austin, TX  78759

Julie Baker
RTI Insurance Services of FL, Inc.
2801-K Estero Blvd
Fort Meyers Beach, FL  33931

Frederick Bauer

Karen Barber
McNulty Barber Consulting
4230 S. MacDill Ave., Ste. 207
Tampa, FL  33611

Daniel Barnett
916 Ridgewood Terrace
Arlington, TX  76012-3120

Barnhart & Associates
670 La Salle Drive
Altamonte Springs, FL  32714

Willard Gene Barnhart
Barnhart & Associates
670 La Salle Drive
Altamonte Springs, FL  32714

James Barnhill
Texas Ins. and Financial Svcs., Inc
102 N. Washington
P. O. Box 950
El Campo, TX  77437

Shirley Barton
Address Unknown

Gary Allen Bastie
523 S. 59th
Saint Petersburg, FL  33707

Harold Jose Batista
4036 Bryan Blvd.
P.O. Box 19107
Plantation, FL  33317

F.A.I.A. Service Corp

# EXHIBIT 1

11 N. Summerlin Ave., Ste. 209
Orlando, FL 32801-2973

John Been
3707 West Center #200
Houston, TX 77042

Benson, Young, and Downs Ins. Inc.
49 Main St.
West Harwich, MA 02671

Ivan Bentauin
Address Unknown

Bart Berretta
Executive & Employee Benefits, Inc.
5100 Poplar Avenue, Ste. 2114
Memphis, TN 38137-2114

Steven Blackford
The Blackford Group
12200-21 San Jose Blvd., Ste 180
Jacksonville, FL 32223-2223

Dirk Blankenship
4615 SW Freeway Suite 1050
Houston, TX 77027

Stephen Blust
Horizon Insurance Associates, Inc.
1114 E. Oakland Ave.
P.O. Box 1561
Bloomington, IL 61702-1561

Peter Bogutzki
767 Seamaster
Houston, TX 77062

Richard Bokofsky
R. B. Insur., Assoc., Inc.
P. O. Box 26182

Tamarac, FL 33320

Jan Booth-Smith
Olympic Mountain Agency
203 4th Avenue East
P.O. Box 12479
Olympia, WA 98508

Richard Brantley
5659 Windsong Dr.
Milton, FL 32570

William Brewer
P.O. Box 789
Rowlett, TX 75030

Steven Brown
Brown-Gainer & Associates
118 Cosgrove Lane
Jacksonville, FL 32246

Brown-Gainer & Associates
118 Cosgrove Lane
Jacksonville, FL 32246

Brown-Gainer, Inc.
237 9th Avenue North
Jacksonville Beach, FL 32250

Bruce W. Fletcher Co., Inc.
1965 N. W. 112th Avenue
Coral Spriings, FL 33071

Carrie Bryant
Address Unknown

Dennis Burden
38 5. High Oaks
Woodlands, TX 77380

Burkett & Asso. Ins. & Fin. Svs Inc

# EXHIBIT 1

6320 St. Augustine Road, Ste. 5A
Jacksonville, FL  32217

James Burkett
Burkett & Asso. Ins. & Fin. Svs Inc
6320 St. Augustine Road, Ste. 5A
Jacksonville, FL  32217

Debra Burton
4309 Waterford Drive
Plano, TX  75024

E. Bruce Bushong
9601 Forest Lane
Dallas, TX  75243

Reginald Caillouet
Reggie Caillouet Brokerage
1406 Tara Street
Houma, LA  70363

Gae Callaway
104 Driftwood Dr.
Portland, TX  78374-2524

Capital Financial Group, Inc
14615 24th Avenue E
P. O. Box 9563
Tacoma, WA  98409-0563

Caputo Insurance Agency, Inc.
6824 Big Beaver Blvd.
Beaver Falls, PA  15010

Richard Caputo
Caputo Insurance Agency, Inc.
6824 Big Beaver Blvd.
Beaver Falls, PA  15010

Robert Carlin
1925 Endeavor Court

Seabrook, TX  77586

Steven Carlson
600 W. Roosevelt Road. A-1
Wheaton, IL  60187

Todd Carmack
5800 N. Winthrop Ave
Chicago, IL  60660

Donald Carroll
1215 Del Toro Dr.
Lady Lake, FL  32159-5711

CBS Ins and Plan Services
100 S. W. Magnolia Avenue
Keystone Heights, FL  32656

Kevin Cerulli
P. O. Box 7157
Port St. Lucie, FL  34985

Donald Chapman
5025 Baldpate
Corpus Christi, TX  78413

# EXHIBIT 1

Chesney Insurance Agency
409 Ten Mile Drive
DeSoto, TX  75115

Larry Chesney
409 Ten Mile Drive
DeSoto, TX  75115

Antone Chomenko
3021 Green Tree
Pearland, TX  77581

Leonard Cifrese
1444 Walden Avenue
Lakewood, NJ  08701

Anneliese Clark
Complete Financial Service
222 Industrial Blvd
Naples, FL  34104

Dean Clark
9894 Bissonet #860
Houston, TX  77036

Brian Clothier
PO Box 310
Arcadia, OK  73007

Russell Coats
4010 Blue Bonnet #117
Houston, TX  77025

Colella Financial Services, Inc.
8240 S. Coral Circle
N. Lauderdale, FL  33068

James Colella
Colella Financial Services, Inc.
8240 S. Coral Circle
N. Lauderdale, FL  33068

Thomas Coleman
3003 So. Congress Ave., Ste. 1D
Lake Worth, FL  33461

Complete Financial Service
222 Industrial Blvd
Naples, FL  34104

Jeffrey Conley
19615 Oak Green Court
Humble, TX  77346

Patrice Connolly
306 E. Gatehouse, #D
Metairie, LA  70001

Robert Corallo
4538 Burkgate Drive
Spring, TX  77373

Connie Countie
7679 S. Cove Circle
Littleton, OK  80122

Elda Cox
5430 Forest Springs
Kingwood, TX  77339

Kurt C. Cradic
3719 Mossy Rock Ct.
Kingswood, TX  77345

Dion R. Cruz
109 Theron

Houston, TX  77070

# EXHIBIT 1

CSS Inc.
Customer Service Solutions, Inc.
25600 Kelly Road
Roseville, MI  48066

Brandy Cumming
Mills Cumming & Assoc, Inc.
5440 Marinor St.
Tampa, FL  33609

James Darby
P.O. Box 3748
Bernice, OK  74331

Earl Grant Darbyson
The Darbyson Group
1060 Raintree Lane
Palm Beach Gardens, FL  33410

David E. Silva Insurance Agency, Inc.
7 Bishop Path
Sandwich, MA  02563

William Davidson
7284 Tara Drive
Villa Rica, GA  30180-3922

Jean F. Davis
15518 Triple Creek
San Antonio, TX  78247

Kelly Davis
Address Unknown

Mark Davis
3675 Red Mesa Tr.
Aubrey, TX  76227

Samuel Day
Address Unknown

Michael Debello F.
4452 NW 65th St.
Coconut Creek, FL  33073

Joseph Debrell
814 US Highway 380 W
Farrnersville, TX  75442-2521

Tammi Desideri
Stetson-Beemer, Ins
690 E. Plumb Lane, #100
Reno,  NV  89502

Maria Diaz
10733 NW 58th St.
Miami, FL  33178-2801

Joseph Dibrell
2523 Hwy
Greenville, TX  75401

Kenneth Dinklage
Insurance Marketing Group of Florida, Inc.
P. O. Box 533709
Orlando, FL  32853

Charles DiPrimio
13909 Wolcott Dr.
Tampa, FL  33624

Anthony DiRienzo
ADR Insurance Services, Inc.

13478 Andova Drive
Largo, FL  34644-4633

# EXHIBIT 1

Wilford Dogan
3826 Quail Meadow
Missouri City, TX  77459

James Doyle
American Benefit Society
c/o Woodburn & Wedge
6100 Neil Road, Ste. 500
Reno, NV  89511

David Dudics
4925 Everhart Suite 108
Corpus Christi, TX  78411

Julian Dwyer
P.O. Box 796606
Dallas, TX  75379

Earl J. Venable & Associates
309 La Rue France
P. O.Box 81296
Lafayette, LA  70598

Kent Edwards
2400 Old South Drive #3724
Richmond, TX  77469

James Ehrhart
725 Madelyn
Des Plaines, IL  60016

Hector Elizondo, Jr.
AXA Advisors, LLC
3625 Duval Road, #1324
Austin, TX  78759

John Elmore
8715 Vista View Drive
Dallas, TX  75243

John Emerick
Vantage Insurance Agency of NV
P.O. Box 33235
Reno, NV  89533

Employee Benefit Service
195 N. Flicker Point
Inverness, FL  34453

Moses Enwerekowe
Rocky Financial Services / aka: Ace
Financial Services
9750 Royal Lane, #401
Dallas, TX  75231

Fredrick Epperson
17508 Ponderosa Pines
Houston, TX  77090

Escambia Insurance
1012 Douglas Avenue
Brewton, AL  36426

Estates Solutions, Inc. dba: Benefit &
Estates Solutions
2207 W. Gowan Rd., Suite A
Las Vegas, NV  89180

Eddie Ette
3901 W. Arkansas Lane #100

Arlington, TX  76016

# EXHIBIT 1

Brent Euler
Address Unknown

Executive & Employee Benefits, Inc.
5100 Poplar Avenue, Ste. 2114
Memphis, TN  38137-2114

Express Florida Health and Life Ins
60 Lakeview Ct.
Palm Harbor, FL  34683

F.A.I.A. Service Corp
11 N. Summerlin Ave., Ste. 209
Orlando, FL  32801-2973

Vito Falco
2497 Yarrow
Rolling Meadows, IL  60008

Michael Farley
3070 SW Mapp Road
P.O. Box 1696
Palm City, FL  34990-6696

Thomas Felaki
PO Box 9514
The Woodlands, TX  77380

John Feliciano
13421 Garden Lake Rd.
Tyler, TX  75703

Roy Fenner
15620 HWY 188
Sinton, TX  78387

Robert Fenton
5303 Alamosa Lane
Spring, TX  77379

Five Star Marketing
4601 Cape Charles Dive
Plano, TX  7507-6824

Five Star Marketing Group
1113 Edgefield Drive
Plano, TX  75075

John Flanagan
385 Johnny Appleseed Lane
Worcester, MA  01453

Linda Fleetwood
Fleetwood-Franz 'Ee Benefits, Inc.
3707 Marked Tree Dr.
Edmond, OK  73013-6863

Fleetwood-Franz 'Ee Benefits, Inc.
3707 Marked Tree Dr.
Edmond, OK  73013-6863

Kenneth Fleming II
1600 River Pointe #211
Lourse, TX  77304

Bruce Fletcher
Bruce W. Fletcher Co., Inc.
1965 N. W. 112th Avenue
Coral Spriings, FL  33071

Gale Follett

8333 Emerald Circle

# EXHIBIT 1

North Richland Hills, TX  76180-5778

For Your Benefits, Inc.
808 Shangri La Dr.
Seffner, FL  33584

Nathan Foreman
c/o Dorais & Grattan
5951 Encina Road, Ste. 104
Goleta, CA  93117

Harnid Foroudi
4103 Bay Shore Drive
Missouri City, TX  77459

Charles Francis
6050 Ridgecrest Road #317
Dallas, TX  75231

Larry Fussell
Escambia Insurance
1012 Douglas Avenue
Brewton, AL  36426

Gaetani Associates
10 Menidon Road
Sutton, MA  01527

Frances Gaetani
Gaetani Associates
10 Menidon Road
Sutton, MA  01527

Michael Gainer
Brown-Gainer, Inc.
237 9th Avenue North
Jacksonville Beach, FL  32250

Ronald Garner
10303 NW Freeway #340
Houston, TX  77092

Paula Garst
7001 Cayman Court
Amarillo, TX  79124

J. Christopher Gauss
J. Christopher Gauss, Inc.
3800 Electric Rd. #301
Roanoke, VA  24018

Robert Gill
4410 Blvd   P.O. Box 1018
Bascliff, TX  77518

Leslie Glazier
6624 Chilton North
Richland Hills, TX  76180

GMI Financial Group, Inc.
403 Main Street
P.O. Box 306
Safford, AZ  85548

Richard Goodman
GMI Financial Group, Inc.
403 Main Street
P.O. Box 306
Safford, AZ  85548

Susan Gordon
3302 Owens Blvd.
Richardson, TX  75082

Elizabeth Gore
Address Unknown

Lillian Gore
2819 Banyan Blvd. Circle N. W.
Boca Raton, FL  33431

Richard Gorfido
784 U. S. Highway One, Suite 18

# EXHIBIT 1

N. Palm Beach, FL  33408

Nancy Graham
Petra Ins
571 NW Pacific Avenue
P.O. Box 936
Chehalis, WA  98532

James R. Grant
Affordable Insurance Options
3061 Pepperwood Lane
Clearwater, FL  33761

Gary Gravely
916 Westwood Circle
Greenville, AL  36037

Darlene Graves
10745 Fox Hole Rd.
Clermont, FL  34711-4711

Mark (Breck) Greene
AFM Insurance Group
2995 LBJ Freeway, Suite 200
Dallas, TX  75234

JoAnn Gulledge
10925 Ridgemeadow Drive
Dallas, TX  75218

David Haas
Haas Insurance Service
1001 Pyramid Way #206
Sparks, NV  89431-4470

Haas Insurance Service
1001 Pyramid Way #206
Sparks, NV  89431-4470

Andy Haase
P0 Box 702363
Dallas, TX  75370

Michael Hall
3313 Teakwood Lane
Plano, TX  75075

Robert E. Hall
Halsey Insurance Agency
31 Wren Lane
Marstons Mills, MA  02648

Halsey Insurance Agency
31 Wren Lane
Marstons Mills, MA  02648

Lee Hampton
Rockport Postmaster
Rockport, TX  78382-9999

Hancor Insurance Agency
P. O. Box 347
Cummaquid, MA  02637

George Hannigan

Hancor Insurance Agency

# EXHIBIT 1

P. O. Box 347
Cummaquid, MA  02637

Kari Hanson
29360 Vacation Dr.
Canyon Lake, CA  92587

Roy Hanson
P. O. Box 214
Simpsonville, MD  21150

Cyd Hargrove
Address Unknown

R. J. Hasselmier
519 Mary Ann
Friendswood, TX  77546

Health Plans of Texas
6446 Southpoint Drive
Dallas, TX  75248

John Helvie
1850 Homewood Blvd., #505
Delray Beach, FL  33445-6918

Kathryn Hendrix
308 Mockingbird Cove
Jonesboro, AR  72401

Gerald Higgins
315 Avila Road
West Palm Beach, FL  33405-1660

Thomas E. Higgins
17760 Esprit Drive
Tampa, FL  33647-2508

Hilcher Ins. & Financial Services
5228 Village Creek Drive, Ste. 100
Plano, TX  75093

C. Wayne Hilcher, LUTCF
Hilcher Ins. & Financial Services
5228 Village Creek Drive, Ste. 100
Plano, TX  75093

David Hines
8209 Kentwood Dr.
North richland Hills, TX  76180-1668

Roger F. Holt, Jr
14405 Walters Road #350
Houston, TX  77014

James Hopgood
Windsor Benefit Consultants, Inc.
One Indian Road
Denville, NJ  07834

Richard Horch
Rick Horch Annuities and Ins.
4316 Pear Trail
Mesquite, TX  75150

Horizon Insurance Associates, Inc.
1114 E. Oakland Ave.
P.O. Box 1561
Bloomington, IL  61702-1561

Edward Hubbard
Hubbard Insurance
467 Terry Lane
Rockwall, TX  75032

# EXHIBIT 1

Hubbard Insurance
467 Terry Lane
Rockwall, TX  75032

Hudson Eldridge Insurance Agency
265 Orleans Road
North Chatham, MA  02650

David Scott Hughes
1714 Apache Trail
Rand Roche, TX  78664

Wesley James Hunt
14915 W. 44th
Mulhall, OK  73063

Robert Hurt
CBS Ins and Plan Services
100 S. W. Magnolia Avenue
Keystone Heights, FL  32656

I. C. Brokerage, Inc.dba Insurance Center
4925 Everhart, Suite 108
Corpus Christi, TX  78411

Gerald Ide
2808 Mill Creek Lane
Rolling Meadows, IL  60008-2110

Jenny Ide
2808 Mill Creek Lane
Rolling Meadows, IL  60008-2110

Insurance Concepts of Texas
11310 Birchwood #102
Humble, TX  77338

Insurance Marketing Group of Florida, Inc.
P. O. Box 533709
Orlando, FL  32853

InsurCare, Inc.
1575 Main Street
Dunedin, FL  34698

InsurCare, Inc.
1575 Main Street
Dunedin, FL  34698

Anthony Iocono
Voluntary Benefit Specialists
71 Saddlebrook Drive
Sewell, NJ  08080

Donna Iverson
Olympic Mountain Agency
203 4th Avenue East
P.O. Box 12479
Olympia, WA  98501

J. Christopher Gauss, Inc.
3800 Electric Rd. #301
Roanoke, VA  24018

Donald Jacoby
Address Unknown

JFM Insurance Inc.
P.O. Box 816566
Hollywood, FL  33081-0566

John Johnson
Employee Benefit Service
195 N. Flicker Point
Inverness, FL  34453

Michael Johnson
USI Insurance Services Corp.

# EXHIBIT 1

470 Park Avenue South, 6th Floor
New York, NY  10016

Brian Jones
7575 Frankford #2424
Dallas, TX  75252

Levern Jordan
PO Box 1337
Katy, TX  77492

Keith Jordano
12751 Orange Blvd.
West Palm Beach, FL  33412-1413

John Kaiser
▬▬▬▬▬▬▬▬
5117 26th st W
Bradenton, FL  34216

Eric Kantor
Capital Financial Group, Inc
14615 24th Avenue E
P. O. Box 9563
Tacoma, WA  98409-0563

Bruce Kashick
4001 NW 97th Ave.
Miami, FL  33178-2384

Mal Kelly
4800 Riverside Dr., Suite 102
West Palm Beach, FL  33410-4252

Kettler & Associates, Inc.
1550 S Dixie Hwy  #208
Coral Gables, FL  33146

Fredrick Kettler
Kettler & Associates, Inc.
1550 S Dixie Hwy  #208

Coral Gables, FL  33146

Edgar Kieschnick
4925 Everhart, Suite 108
Corpus Christi, TX  78411

Cecil Knight
11122 Midhurst Street
Houston, TX  77072

Michael Kolacz
500 N. Central Expressway #215
Plano, TX  75074

Robert Kotman
Address Unknown

Richard Kozar
Ryko Corp, Inc.
8177 Plam Gate Dr.
Boyaton Beach, FL  33436

Hilbert Kritch
Midwest Marketing Insurance Agency
2500w. Higgins Suite 1045
Hoffman Estates, IL  60195

James Kruckemeyer
25301 Borough Park #221
Woodlands, TX  77380

Richard Kwong
1711 Raton Drive
Arlington, TX  76018

Sally Lane
6506 E. 66th St
Tulsa, OK  74133

James Lang
InsurCare, Inc.

# EXHIBIT 1

1575 Main Street
Dunedin, FL  34698

Paul Laroussini
2310 Old Fountain Road
Lawrenceville, GA  30043

Mitch Laughton
The Laughton Company
50 Washington St. #100
Reno, NV  89503

Dennis Law
6109 Hedgeapple Court
Arlington, TX  76001

John LeFavour
4715 Strack Suite 205
Houston, TX  77069

June Lempke
5738 Sullivan Lane
Jacksonville, FL  32207

Gal Lev-Lehman
Alliance for Affordable Health
5225 Katy FWY #605
Houston, TX  77035

Walter Lightfoot
Burkett & Asso. Ins. & Fin. Svs Inc
6320 St. Augistine Road, Ste. 5
Jacksonville, FL  32217

James Lilly
2208 Old Clebume Road
Granbury, TX  76048

Harvey Litvin
5646 Ravenel Lane
P. O. Box 1331

Springfield, VA  22151-0331

William Michael Lovell
8281 Lafayette Street
Denham Springs, LA  70726

Stephen Lukacs
Express Florida Health and Life Ins
60 Lakeview Ct.
Palm Harbor, FL  34683

Michelle Magidson
7608 Cutless Court
Arlington, TX  76016

Fredrick Magiera
Advanced Marketing
7100-39 Fairway Drive, Ste. 225C
Palm Beach Gardens, FL  33418

Mainstream Insurance
1700 North Dixie Hwy
Boca Raton, FL  33432

# EXHIBIT 1

Gary Maxie
AAA Insurance Services
6054 Graham C Road
Meridian, MS  39307

Brian McAllister
5117 26th St. W
Bradenton, FL  34207

Andrew McCoy
10203 Birchridge Ste 805
Humble, TX  77338

Bruce McKinney
Preferred Care, Inc.
2312 Swann Avenue
Tampa, FL  33609

David McNamara
P.O. Box 500
Sharon, MA  02067

McNulty Barber Consulting
4230 S. MacDill Ave., Ste. 207
Tampa, FL  33611

Vence Meneely
P0 Box 2534
Shidler, OK  74652

Gary Miano
8557 Boca Rio Drive
Boca Raton, FL  33433

Robert John Middleton
Health Plans of Texas
6446 Southpoint Drive
Dallas, TX  75248

Midwest Marketing Insurance Agency
2500w. Higgins Suite 1045

Hoffman Estates, IL  60195

Mike Williams Ins. Ltd.
103 W. Franklin Street
P. O. Box 660
Quitman, MS  39355

Mark Miller
115 E. Main St.
Colfax, IL  61728

Mills Cumming & Assoc, Inc.
5440 Marinor St.
Tampa, FL  33609

Jeffrey Milrad
JFM Insurance Inc.
P.O. Box 816566
Hollywood, FL  33081-0566

Lawrence Montgomery
602 S. Belknap Street
Sugartand, TX  77478

Robert Morgan
230 South East 54
Oklahoma City, OK  73129

Wayne Morris
5117 Whippoorwill Crt
Tyler, TX  75703

Wayne Morriss
1704 Tower Dr.
Arlington, TX  76010

# EXHIBIT 1

Robert Mullinax
Association Benefits Solution, Inc.
1929 Buford Boulevard
Tallahassee, FL  32308-4466

William Murphy
162 Connecticut Ave.,
Somerset, MA  02726

Harrison Myers
2470 South Dairy Ashford #178
Houston, TX  77077

Nassau Bay Agency, Inc
P. O. Box 58273
Nassau Bay, TX  77258

Nationwide Insurance
2414 Tamiami Trail, Unit #5
Port Charlotte, FL  33952

Michael Newby
5005 Georgi Lane
P0 Box 672983
Houston, TX  77267

Donald Alan Nicholson
Addison Postmaster
Addison, TX  75001-9999

Ernest Norman
5644 SE Horseshoe Pt. Rd.
Stuart, FL  34997

Norwell and Norwell
27 Gale Street
Fitchburg, MA  01420

Rhonda O'Banion
RT 1 Box 280 A
8020 N FM 2125
Brownwood, TX  76801

Gary Oliver
927 Valley View Avenue
Red Oak, TX  75154

Olympic Mountain Agency
203 4th Avenue East
P.O. Box 12479
Olympia, WA  98501

Gerald Owens
11920 Gold Creek Drive E
P.O. Box 1651
Keller, TX  76244

Page Inc.
9167 Bay Point Drive
Orlando, FL  32819

Kay Page
Page Inc.
9167 Bay Point Drive
Orlando, FL  32819

Matthew Palmer
101 E. Kennedy Blvd., Suite 3500
Tampa, FL  33602-5151

Edward Parodi
509 Eagle Lakes Drive
Friendswood, TX  77546

William H. Patterson
312 Etta Lane
Waxahachie, TX  75165

Toni Paxton

# EXHIBIT 1

1413 Glenda
Yukon, OH  73099

D. Jean Payne
Address Unknown

Sherri Perri
Summit Group Benefits, Inc.
3225 S. MacDill Ave., #342
Tampa, FL  33629

David William Perry
800 Post Oak Blvd #55
Houston, TX  77056

Petra Insurance Agency, Inc.
571 NW Pacific Avenue
P.O. Box 936
Chehalis, WA  98532

William Phillips
5444 Bay Center Dr.
Tampa, FL  33609

Steven Pickett
Premier Marketing Group
3035 Dogwood Creek Parkway
Duluth, GA  30136

Marc Pieroni
1000 East Campbell #106
Richardson, TX  75081

Fredrick (Rick) Pike
Pike Insurance Agency, Inc.
8 Main Street
P.O. Box 1658
Orleans, MA  02653-2418

Pike Insurance Agency, Inc.
8 Main Street

P.O. Box 1658
Orleans, MA  02653-2418

Susan Pine
Quik Quote Insurance Brokers, Inc.
8181 W. Broward Blvd., Suite 204
Plantation, FL  33324-2049

Brent Pinkerton
Nationwide Insurance
2414 Tamiami Trail, Unit #5
Port Charlotte, FL  33952

Raymond Pinto
8181 W. Broward Blvd., Suite 204
Plantation, FL  33334-2049

David Eli Polovina
All Florida Insurance Services Inc
3724 Beach Blvd.
Jacksonville, FL 32207

Michael Porter
Benson, Young, and Downs Ins. Inc..
49 Main St.
West Harwich, MA  02671

Cameron Pouncey
P. O. Box 276
Bonifay, FL  32425

Preferred Care, Inc.
2312 Swann Avenue
Tampa, FL  33609

# EXHIBIT 1

Premier Marketing Group
3035 Dogwood Creek Parkway
Duluth, GA  30136

Stanley Putman
2634 Orange Picker Road
Jacksonville, FL  32223

Quik Quote Insurance Brokers, Inc.
8181 W. Broward Blvd., Suite 204
Plantation, FL  33324-2049

R. B. Insur., Assoc., Inc.
P. O. Box 26182
Tamarac, FL  33320

Arif Rahim
4115 Admiral Court
Missouri City, TX  77549

Lawrence Ramers
9147 Glades Road
Boca Raton, FL  33434

Ray Wall & Associates, Inc.
1901 S. Weinbach Ave
Evansville, IN  47714

Mark Reaves
11632 Kingswick Drive
Oklahoma City, OK  73162-2917

Reggie Caillouet Brokerage
1406 Tara Street
Houma, LA  70363

Robert J. Reid
634 Route 28A Fl 2
North Falmouth, MA  02556-9998

Reliable Insurance

6569 Blue Bay Circle
Lake Worth, FL  33467

Thomas Reynolds
1609 Pine Crest
Houston, TX  77020

Rick Horch Annuities and Ins.
4316 Pear Trail
Mesquite, TX  75150

Albert Riehl
9130 Jollyville Road Suite 365
Austin, TX  78759

Michael Roberts
16806 Spruce Run Drive
Spring, TX  77379

Rocky Financial Services / aka: Ace
Financial Services
9750 Royal Lane, #401
Dallas, TX  75231

Nathan Rogers
422 N. Hardeman Circle
Justin, TX  76247

Sheila Rooney
Sheila W. Rooney Agency
250-B3 N. W. 76 Drive
Gainesville, FL  32607

Scott Rose
Mainstream Insurance
1700 North Dixie Hwy
Boca Raton, FL  33432

Kenneth Rosicka
7022 East 50th Place
Tulsa, OH  74145

# EXHIBIT 1

RTI Insurance Services of FL, Inc.
2801-K Estero Blvd
Fort Meyers Beach, FL  33931

Jesse Rubio
2619 Province Lane
Dallas, TX  75228

Bobby Rundle
3917 Jim Robinson
Edmond, OK  73013

Barry Rusche
WIN
5126 San Jose Street
Tampa, FL  33629

Scott Rutherford
14923 Elmont
Houston, TX  77095

Ryko Corp, Inc.
8177 Plam Gate Dr.
Boyaton Beach, FL  33436

Steven Sacks
Address Unknown

SafeComp
P. O. Box 835385
Richardson, TX  75083-5385

Catherine Sams
501 Greensward Lane, Apt. 204C
Delray Beach, FL  33445

Susan Schilling
Hudson Eldridge Insurance Agency
265 Orleans Road
North Chatham, MA  02650

Craig Schoen
20710 Flagmore
Katy, TX  77450

Dennis Schrecker
Thompson Associates, Inc.
9720 Bunsen Parkway
Louisville, KY  40299

Robert Schwab
SafeComp
P. O. Box 835385
Richardson, TX  75083-5385

Selwin Schwartz
Worldwide Insurance Services, Inc.
3210 Doolittle Dr.
Northbrook, IL  60062

S. Lewis Shafik
14557 Carol Crest
Houston, TX  77079

Edward (Brack) Shaver
5545 Greenview Court
Ft. Worth, TX  76148

Fredrick Shealy
The Insurance Center
214 North 16th Street, B-1
McAllen, TX  78501

# EXHIBIT 1

Sheila W. Rooney Agency
250-B3 N. W. 76 Drive
Gainesville, FL  32607

Howard Siegel
17339 118th Terrace N.
Jupiter, FL  33478

Sierra Administration Marketing, Inc.
c/o Bruce Laxalt, Esq.
Laxalt & Nomura, Ltd.
50 W. Liberty St., #70
Reno, NV  89501

David E. Silva
David E. Silva Insurance Agency, Inc.
7 Bishop Path
Sandwich, MA  02563

Clyde Sinyard
Address Unknown

Don R. Smith
Five Star Marketing
4601 Cape Charles Dive
Plano, TX  7507-6824

John Snape
10-1 Library Lane
Old Lyme, CT  06371

Audrey Snow
Reliable Insurance
6569 Blue Bay Circle
Lake Worth, FL  33467

Gerald Solomon
1567 Whispering Oaks Cr.
Naples, FL  34110-4140

Dennis Stanhoff

P.O. Box 34
South Elgin, IL  60177

Starling & Associates, L.L.C.
523 South 59th Street
St. Petersburg, FL  33707

William F. Starling
Starling & Associates, L.L.C.
523 South 59th Street
St. Petersburg, FL  33707

Stetson-Beemer, Ins
690 E. Plumb Lane, #100
Reno, NV  89502

Donna Stilwell-Kronick
9720 Liberty Hill
Liberty, MO  64068

Stockman's Insurance
P. O. Box 1660
Minden, NV  89423

Robert Stone
P0 Box 496597
Garland, TX  75049

Penelope Stump
For Your Benefits, Inc.
808 Shangri La Dr.
Seffner, FL  33584

Sullivan & Associates, Inc.
2320 N. E. 49th Street
Lighthouse Point, FL  33064

# EXHIBIT 1

John Sullivan
Nassau Bay Agency, Inc
P. O. Box 58273
Nassau Bay, TX  77258

Timothy Sullivan
Sullivan & Associates, Inc.
2320 N. E. 49th Street
Lighthouse Point, FL  33064

Summit Group Benefits, Inc.
3225 S. MacDill Ave., #342
Tampa, FL  33629

James Swafford
18424 NW Guilford Circle
P.O. Box 947
Blountstown, FL  32424

Porter Talbot
Estates Solutions, Inc. dba: Benefit &
Estates Solutions
2207 W. Gowan Rd., Suite A
Las Vegas, NV  89180

Richard Tani
CSS Inc.
Customer Service Solutions, Inc.
25600 Kelly Road
Roseville, MI  48066

Nicholas Taromina
600 Nottingham Oaks Trails
Houston, TX  77079

Texas Ins. and Financial Svcs., Inc
102 N. Washington
P. O. Box 950
El Campo, TX  77437

The Blackford Group

12200-21 San Jose Blvd., Ste 180
Jacksonville, FL  32223-2223

The Darbyson Group
1060 Raintree Lane
Palm Beach Gardens, FL  33410

The Insurance Center
214 North 16th Street, B-1
McAllen, TX  78501

The Laughton Company
50 Washington St. #100
Reno, NV  89503

Scott Thiltgen
1107 Tremont
Cedar Park, TX  78613

Thompson Associates, Inc.
9720 Bunsen Parkway
Louisville, KY  40299

James Thompson
1110 Kingwood Drive Suite 2A
Kingwood, TX  77429

Kyle Thompson
14010 Gray Bear Circle
Cypress, TX  77429

Terence Thoruton
372 Radio Tower Rd.
Waco, TX  76705

Tobin Ins. Agency, Inc.
45 N. E. Loop 410, Ste. 485
San Antonio, TX  78216
James Tobin
Tobin Ins. Agency, Inc.
45 N. E. Loop 410, Ste. 485

# EXHIBIT 1

San Antonio, TX  78216

Stewart Turnage
2209 6th Ave.
Fort Worth, TX  76110-1807

James Tuten
ABSI
1929 Buford Blvd.
Tallahassee, FL  32317-3908

Ronald Unfried
Ray Wall & Associates, Inc.
1901 S. Weinbach Avenue
P.O. Box 2994
Evansville, IN  47728

Deborah Usher
25335 Buddle Road #662
Spring, TX  77380

USI Insurance Services Corp.
470 Park Avenue South, 6th Floor
New York, NY  10016

Sebastian Valera
Norwell and Norwell
27 Gale Street
Fitchburg, MA  01420

Vantage Insurance Agency of NV
P.O. Box 33235
Reno, NV  89533

Earl Venable
Earl J. Venable & Associates
309 La Rue France
P. O.Box 81296
Lafayette, LA  70598

Roy Vicencio
6070 Gateway E Suite 215
El Paso, TX  79905

Voluntary Benefit Specialists
71 Saddlebrook Drive
Sewell, NJ  08080

Gene Wadell
Wadell Insurance Group
645 Beachland
Vero Beach, FL  32963

Wadell Insurance Group
645 Beachland
Vero Beach, FL  32963

Raymond Wall
Ray Wall & Associates, Inc.
1901 S Weinbach Ave
Evansville, IN  47714

Gary Ward
Insurance Concepts of Texas
11310 Birchwood #102
Humble, TX  77338
John Wathen
355 E. Vista Ridge Mall Drive #4422
Lewisville, TX  75067

Richard Waugaman
540 Creekwood Drive
Marrietta, GA  30068

Brian Weaver

9884 Estacado Drive

# EXHIBIT 1

Dallas, TX  75228

Eric Westall
4400 Post Oak Parkway Suite 1660
Houston, TX  77027

Harry Wilk, III
I. C. Brokerage, Inc.dba Insurance Center
4925 Everhart, Suite 108
Corpus Christi, TX  78411

Bernard Williams
20918 Tonydale Lane
Spring, TX  77388

George Michael Williams
Mike Williams Ins. Ltd.
103 W. Franklin Street
P. O. Box 660
Quitman, MS  39355

Karel Anne Williamson
1291 Bradford
Coppell, TX  75019

WIN
5126 San Jose Street
Tampa, FL  33629

Windsor Benefit Consultants, Inc.
One Indian Road
Denville, NJ  07834

Wolfco, Inc.
3835 Palm Beach Blvd.
Ft. Myers, FL  33916

Carmen Wolfe
Wolfco, Inc.
3835 Palm Beach Blvd.
Ft. Myers, FL  33916

Worldwide Ins. Group, Inc.
12443 S. Dixie Highway
Miami, FL  33156

Worldwide Insurance Services, Inc.
3210 Doolittle Dr.
Northbrook, IL  60062

John Wuthnow
423 Carlton Circle
Wichita, KS  67209

Angie Yanda
Worldwide Ins. Group, Inc.
12443 S. Dixie Highway
Miami, FL  33156

Leon Yannaroudis
InsurCare, Inc.
1575 Main Street
Dunedin, FL  34698

Adrian Zangirolarrli
12335 Roy Road
Pearland, TX  77581

# EXHIBIT 1