MICHAEL P. DENVER (CA Bar No. 199279)
THE DENVER LAW GROUP
514 West Pueblo St., Ground Floor
Santa Barbara, CA  93105
Telephone: (805) 896-4967
Email: mdenver@denverlawgroup.law

Marc P. Cook (NV Bar No. 4574)
COOK & KELESIS, LTD.
517 South 9th Street
Las Vegas, Nevada 89101
Telephone: (702) 737-7702

Attorneys for Thomas A. Dillon, Independent
Fiduciary of Employers Mutual, LLC and the Employers
Mutual Plans, and the Class Representative of the Class of Individuals

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS A. DILLON, INDEPENDENT FIDUCIARY OF EMPLOYERS MUTUAL, LLC, AND THE EMPLOYERS MUTUAL PLANS, AND, THE CLASS REPRESENTATIVE OF THE CLASS OF INDIVIDUALS,<br>         Plaintiffs,<br>v.<br>JAMES GRAF; WILLIAM KOKOTT; NICHOLAS E. ANGELOS; EMPLOYERS MUTUAL, LLC, et al.,<br>         Defendants. | CASE NO.: CV-N-03-0119-DAE-VPC<br><br>[PROPOSED] ORDER FOR FINAL DISTRIBUTION OF FUNDS<br><br>✓ FILED  ___ RECEIVED<br>___ ENTERED  ___ SERVED ON<br>COUNSEL/PARTIES OF RECORD<br><br>SEP - 1 2022<br><br>CLERK US DISTRICT COURT<br>DISTRICT OF NEVADA<br>BY: _____ DEPUTY |

NOW THEREFORE, based on the submissions of the Independent Fiduciary, the pleadings on file and the lack of any objection, the Court hereby FINDS, ADJUDGES AND DECREES as follows:

## FINDINGS OF FACT

1. The Court makes the findings of fact below based on the evidence submitted in support of the Motion to Distribute Funds by Thomas A. Dillon as the Class Representative of the Class of Individuals in this action and as the Court-appointed Independent Fiduciary and Receiver (the "Independent Fiduciary").[1] That evidence includes the Independent Fiduciary's accounting of his appropriately incurred costs, as well as his sworn estimates of his appropriate future expenses (including fees payable to him) for winding up the quasi-bankruptcy proceeding ordered in the related matter styled *Walsh v. Graf, et al.*, Case No. CV 01-0698 – ECR (the "ERISA Proceeding"). See ERISA Proceeding Dkt #73 (quasi-bankruptcy order). In the record citations below, "Dillon Decl." refers to the declaration of Thomas A. Dillon filed in support of the Motion, and unless otherwise stated, docket numbers refer to the docket in the ERISA Proceeding. The Dillon Declaration in turn includes the Independent Fiduciary's sworn accounting of the quasi-bankruptcy estate's ("Estate," created by order at Dkt #73) assets and expenses. The Estate comprises the receivership's assets and expenses. Dkt #73 ¶ 4.

2. In the above-captioned action, *Dillon v. Graf, et al., CV-N-03-0119-DAE-VPC* (D. Nev.) (the "Malpractice Action"), Dillon obtained four groups of settlements ("Settlement Waves I-IV") that gave him, as Independent Fiduciary, a net recovery totaling $11,500,069 (Decl. ¶ 31). In addition to the Malpractice Action, Dillon recovered substantial additional funds (roughly $5 million) from other sources as detailed in his accompanying Declaration. (Decl. ¶¶ 30-32).

3. By its order of November 21, 2012, the Court authorized the Independent Fiduciary to issue a partial distribution of funds. Docket No. 388. In that order, the Court approved the Independent Fiduciary's claims administration and adjudication process, approved the plan of partial distribution to cover administrative expenses and pay benefits, and directed the Independent Fiduciary to: (i) reserve funds to cover potential tax liabilities; (ii) reserve funds to

---

[1] In addition to serving as the Independent Fiduciary and Receiver, Dillon was appointed to represent the "Class of Individuals," which encompasses all persons who purchased the alleged health insurance outside of an ERISA-governed employment relationship (see Dillon Decl. ¶ 29 and Case No. CV-01-0698, Dkt. #209).

pay expenses incurred by his administrative service providers ("Administrative Creditors"); and (iii) distribute $6,146,162.49 to pay 100% of the covered insurance benefit claims of Employee Welfare Benefit Plan ("EWBP" or "Plan") participants and other covered individuals who have paid for covered medical services out-of-pocket ("Category A Creditors"); and (iv) partially pay (20 cents on the dollar) the covered claims of medical care providers ("Category B Creditors"). See Docket No. 388, approving the partial distribution, as well as Docket No. 73; the "Quasi-Bankruptcy Order," defining categories of Creditors; and Docket No. 209, defining the Class of Individuals. Dillon carried out the Court-approved partial distribution plan, including paying out the $6,146,162.49 for insurance benefits in accord with the Court's orders. (Decl. ¶ 72).

4.      Following the partial distribution in 2012, the Independent Fiduciary had to devote higher-than-anticipated time, energy and money to resolve the tax issues for which the Court had approved holding back funds in the 2012 partial distribution order. Independent Fiduciary Dillon also had to spend unanticipated time, energy and money to address state-by-state escheatment issues for those payees whom Dillon was unable to locate through reasonable efforts. Unanticipated in 2012 and necessary to Dillon's administration of the receivership, these several tasks required Dillon to spend amounts beyond the amounts approved for administrative expenses in the 2012 order. (Decl. ¶ 73).

5.      Offsetting the increased administrative expenses is the fact that Dillon resolved the tax issues successfully: the receivership had no income tax liability. Employers Mutual's expenses exceeded revenues, and there were loss carryovers from year to year. At the end, the receivership's only required tax-related payment was $12,600 in penalties and interest due to roughly 100 incorrect or invalid employer identification numbers ("EINs") utilized in the initial partial distribution. After subtracting these penalties and interest from the previous and Court-approved $5,582,196.92 reserve for unresolved tax issues, $5,569,596.92 is now available for the final distribution to pay costs of administration and pay additional insurance benefits. (Decl. ¶¶ 114-115).

6.    The Independent Fiduciary has now moved the Court to: (i) approve his already-paid administrative expenses; (ii) authorize him to withhold funds to cover the future administrative costs and possible escheatment penalties anticipated in the closing of the file; (iii) approve a reserve for his updated estimate of his own fees and expenses, the payment of which shall be the subject of a separate application; and (iv) grant him authority to distribute remaining funds to further partially pay the covered claims of medical care providers ("Category B Creditors").

7.    Independent Fiduciary Dillon's declaration in support of this motion sets forth the details concerning this necessary increase in administrative expenses, much of which resulted from the time and effort needed to resolve income tax issues and from state-by-state escheatment issues. (Decl. ¶¶ 73-108).

8.    In support of his final distribution plan, Dillon also requests the Court to: (i) approve his estimated hourly fees as the Independent Fiduciary which, because of the unanticipated time and work required by the income tax and escheatment issues, have increased by $80,000 from the previously approved 2012 amount, with the caveat that Dillon will seek the Court's approval for payment of the final amount of fees via a separate filing; (ii) approve the newly-encountered escheatment expenses, for which Dillon anticipates he will pay Sovos Compliance, LLC (a consultant specializing in escheatment procedures) $115,000; (iii) approve a reserve of $100,000 for Dillon to address state-by-state escheatment charges and penalties; (iv) approve already-paid administrative expenses above the amounts approved in the 2012 order; and (v) approve a reserve for future anticipated administrative expenses. The already-paid administrative expense amounts above the amounts approved in the 2012 order total $520,984.33 (Decl. ¶ 109). Dillon estimates the administrative expenses yet to be incurred in winding this litigation down will be an additional $534,000. (Decl. ¶ 109). For administrative expenses, the chart below summarizes: (1) the amounts by which already-paid amounts exceed the 2012 order and (2) Dillon's estimates of anticipated additional amounts needed to wind up the receivership:

| Administrative Expense: | Amount Approved in 2012 | Amount Paid as of 2021 | Difference Between 2012 Approved Amount And Amount Already Paid | Anticipated Future Expense |
|---|---|---|---|---|
| | | | | |
| Claims Administration: | $3,102,870.20 *(Decl. ¶¶ 83-84)* | $3,656,877.62 *(Decl. ¶ 87)* | $554,007.42 *(Decl. ¶¶ 87, 89)* | $260,000.00 *(Decl. ¶¶ 78, 88-89)* |
| Legal Fees & Costs: | $486,292.23 *(Decl. ¶ 96)* | $679,743.35 *(Decl. ¶¶ 95-96, 100)* | $193,451.12 *(Decl. ¶¶ 96, 100)* | $139,000.00 *(Decl. ¶¶ 98-100)* |
| Accountants: | $196,795.00 *(Dkt No. 388 at 4-5)* | $105,267.00 *(Decl. ¶ 106)* | ($91,528.00) *(Decl. ¶ 106)* | $25,000.00 *(Decl. ¶ 106)* |
| Banks: | $24,851.55 *(Decl. ¶ 68)* | $34,725.31 *(Decl. ¶ 107)* | $9,373.76 *(Decl. ¶ 107)* | $25,000.00 *(Decl. ¶ 107)* |
| Other: | $285,205.49 *(Decl. ¶ 108)* | $140,885.52 *(Decl. ¶ 108)* | ($144,319.91) *(Decl. ¶ 108)* | $85,000.00 *(Decl. ¶ 108)* |
| | | | | |
| TOTALS | $4,096,214.47 *(Decl. ¶¶ 80, 109)* | $4,617,498.80 *(Decl. ¶¶ 109, 117)* | $520,984.33 *(Decl. ¶ 109)* | $534,000.00 *(Decl. ¶ 109)* |

(Decl. ¶ 109).

9. The Independent Fiduciary also requests authority to distribute all remaining funds (net of authorized costs and fees) to pay further benefits to Category B Creditors and requests authority to follow the same pro rata plan of distribution previously ordered in the 2012 partial distribution order (Dkt. # 388). (Decl. ¶¶ 47-67).

10. In the 2012 order approving the partial distribution (Dkt. 388 at § II.4), the Court previously approved the final claims report setting forth the thousands of covered claims (the "Final Claims Report," attached to Dkt. 381-1 as Exh.7), as well as the Independent Fiduciary's plan to pay those claims on a pro rata basis out of recovered funds (Decl. ¶¶ 64-67). The 2012 partial distribution Order directed pro rata payment of the claims for insurance benefits of Category B Creditors identified in the Final Claims Report. (Docket No. 388 p. 6, ¶ 5).

11. The proposed final distribution does not include distributions to Category A Creditors (the Plan Participants), as those claims were paid 100% by the prior partial distribution. Nor does the proposed final distribution plan include distributions to Category C or D Creditors. This is because: (i) no Category C or D creditors have submitted claims; (ii) the Independent Fiduciary has not identified any Category C Creditors; and (iii) the combined claims of Category B Creditors far exceed available funds, leaving no funds for distribution to Category C Creditors. Under the Quasi-Bankruptcy Order (Dkt No. 73 ¶ 6.4, Dkt No. 284 ¶ 6), Category C Creditors can receive a distribution only if Category B Creditors have been paid 100% of their allowed claims, and Category D Creditors can be paid only if Category C Creditors receive 100% of their allowed claims. (Decl. ¶ 67).

12. Before any reductions to pay costs or to pay benefits, Dillon recovered total assets of $16,594,207.86, which amount includes roughly $35,000 in earned interest since 2012. (Decl. ¶¶ 70, 108 & 116).

13. The amount of funds available for the final distribution to Category B Creditors is calculated by starting with the $16,594,207.86 amount discussed in the prior paragraph and then reducing that figure by the combined amount of: (i) the partial distribution to pay benefits totaling $6,146,162.49; (ii) the above-described administrative expenses (not including Dillon's own estimated Independent Fiduciary fees and costs) incurred as of 2021, totaling $4,617,498; (iii) the 2012 already-approved estimated fees of the Independent Fiduciary, which are $735,000; (iv) the 2021 estimate for future Independent Fiduciary fees, totaling $80,000; (v) the 2021 estimate for future fees and expenses of other (non-Independent Fiduciary) Administrative

Creditors, totaling $534,000; (vi) a reserve for potential escheatment penalties of $100,000; (vii) an estimated $115,000 for the Sovos firm's escheatment-compliance; and (viii) the $12,600 paid in income tax penalties. These items "(i)" through "(viii)" total $12,340,260.49. Subtracting this $12,340,260.49 from the $16,594,207.86 in assets discussed in the prior paragraph, Dillon has roughly $4,253,947.37 left to further pay claims for insurance benefits to Category B Creditors in the final distribution. (Decl. ¶¶ 109, 117).

14. The below chart graphically illustrates the calculation of the amount left to be distributed to Category B Creditors:

| | ASSET SUMMARY |
|---|---|
| Recovered Assets | $16,594,207.86 |
| Less Partial Distribution | -$6,146,162.49 |
| Less Admin Exp. Incurred as of 2021 | -$4,617,498.00 |
| Less 2012 Approved Est. Fees of Independent Fiduciary | -$735,000.00 |
| Less 2021 Est. Future Fees of Independent Fiduciary | -$80,000.00 |
| Less Other Est. Future Administrative Creditor Exp. | -$534,000.00 |
| Less Possible Escheatment Penalties | -$100,000 |
| Less Est. Future Escheatment Costs | -$115,000.00 |
| Less Incurred Tax Penalties | -$12,600.00 |
| **Amount Available For Final Distribution to Category B Creditors** | **$4,253,947.37** |

(Decl. ¶ 118).

NOW THEREFORE, THE COURT HEREBY ADJUDGES DECREES AND ORDERS AS FOLLOWS:

The Court HEREBY APPROVES AND AUTHORIZES Dillon's plan to reserve funds for the possible escheatment penalties totaling $100,000.

The following categories and corresponding amounts for incurred and anticipated expenses are HEREBY APPROVED: (i) the increase of $80,000 to Dillon's estimated hourly

fees as the Independent Fiduciary from $735,000 to $815,000 with the caveat that Dillon will seek the Court's approval for payment of the final amount of fees via a separate filing; (ii) the newly-encountered escheatment expenses, for which Dillon anticipates paying Sovos $115,000; (iii) the $520,984.33 in administrative expenses (Decl. ¶¶ 80, 109) paid above the $4,096,214.47 authorized in the 2012 order (Dkt. No. 388); and (iv) Dillon's estimate of $534,000 for future administrative expenses summarized in paragraph eight above.

Dillon's plan to distribute the receivership funds remaining (roughly $4,253,947.37 after his reductions for the above-noted expenditures), to further pay pro rata insurance benefits to Category B Creditors (set forth in ¶¶ 13-14, above), is HEREBY AUTHORIZED AND APPROVED, and the Independent Fiduciary is ORDERED to carry out the final distribution in efficient manner.

The Court shall retain jurisdiction over this matter for future approvals and the eventual discharging of the Independent Fiduciary.

Dillon's counsel is authorized to destroy counsel's case records after 3 years' time from the date of this Order.

Dated: Sept. 1, 2022            By _____
                                    UNITED STATES DISTRICT COURT JUDGE